LARIO, J.T.C.
Mary’s Manor, Inc. appeals from a judgment of the Atlantic County Board of Taxation which denied its claim for a tax exemption on its premises, for the tax year 1990 and affirmed an assessment of Land—$26,600; Improvements—$91,700; Total—$118,300. The quantum of the assessment is not challenged; the sole issue is whether the subject property is entitled to a tax exemption.
Mary’s Manor claims its property is entitled to tax-exempt status pursuant to that portion of N.J.S.A. 54:4-3.6 which, in relevant part, states:
All property owned and used by any non-profit corporation in connection with its curriculum, work, care, treatment and study of feebleminded, mentally retarded, or idiotic men, women, or children shall also be exempt from taxation, provided that such corporation conducts and maintains research or professional training facilities for the care and training of feebleminded, mentally retarded, or idiotic men, women, or children; provided, in case of all the foregoing the buildings, or the lands on which they stand, or the associations, corporations, or institutions using and occupying them as aforesaid, are not conducted for profit, except that the exemption of the buildings and lands used for charitable, benevolent or religious purposes shall extend to cases where the charitable, benevolent or religious work therein carried on is supported partly by fees and charges received from or on behalf of beneficiaries using or occupying the buildings; provided, the building is wholly controlled by and the entire income therefrom is used for said charitable, benevolent or religious purposes____
Mary’s Manor was organized in 1984 as a non-profit corporation pursuant to the New Jersey Nonprofit Corporation Act, N.J.S.A. 15A:1-1 et seq. Its certificate of incorporation states *191 that it is organized and operated exclusively for non-profit purposes and no part of any net earnings shall inure to the benefit of any private member or shareholder and its purposes are:
A. To promote the welfare of handicapped persons;
B. To house and care for handicapped persons;
C. To pursue such actions as may be beneficial to the care, protection,
advancement, or well-being of handicapped persons.
It is also authorized to pay reasonable compensation for services rendered and to make payments and distributions in furtherance of its stated purposes; however, no substantial part of the organization’s activities shall be the carrying on of propaganda or otherwise attempting to influence legislation or engage in political activity. The organization has nine trustees, none of whom receives any compensation whatsoever. Only one of them is related to a resident of the home. The Internal Revenue Service has issued a determination letter that Mary’s Manor is qualified as a 501(c)(3) organization and that it is not a private foundation within the meaning of section 509(a) of the Internal Revenue Code.
The subject property owned and operated by plaintiff is located at 122 S. Odessa Avenue, in the Egg Harbor section of the township. The land consists of approximately 6.6 acres, having a frontage of 250 feet by a depth of 1,058.38 feet and located thereon are three buildings. The main building is a one-story and basement frame dwelling, 27 feet by 43 feet containing five bedrooms, two baths, a living room and kitchen on the ground level, plus a full basement. The basement of the dwelling is used for academia and crafts. Also located on the land is a barn 20 feet by 10 feet utilized for storage purposes, and a shed 6 feet by 12 feet where its lawn mower is kept.
Mary’s Manor operates the premises as a home for mentally retarded and handicapped adults who have been classified as developmentally disabled and referred to by them as “residents.” No part of the subject property is leased; nor is it occupied and used for any purpose other than for the benefit of the residents. The organization is financially sustained as follows: A one-time entrance fee of $5,000 is charged plus receipt of the assignment of each resident’s monthly Social *192 Security benefits. For every year that an applicant’s parents or guardians actively support Mary’s Manor through membership and work in Mary’s Manor parents’ support group, a credit of $1,000 a year, up to $5,000, is deducted from the entrance fee. The entrance fee will be refunded within the first 90 days of admission in the event of an individual’s withdrawal or termination. All individuals and their parents, or their legal guardians, are afforded the opportunity of making pre-placement visits prior to admission. The eligibility criteria for all potential residents of Mary’s Manor are:
1. must have a primary diagnosis of mental retardation;
2. have no emotional disturbances, mental illness, or communicable disease;
3. be 18 years or older;
4. may be male or female, depending upon available space;
5. must be ambulatory;
6. must possess basic living skills;
7. must be employable in either a sheltered workshop or in competitive employment;
8. must complete intake process;
9. must submit a satisfactory medical report of an examination performed within 30 days before admission; and,
10. the organization will not refuse admission to anyone based upon race, religion or ethnic origin.
Although the corporation was formed in 1984, the subject property was not purchased until January 30, 1989. At that time, six mentally retarded adults were accepted. These six represent the full number of disabled persons that the home can accommodate. These initially admitted adults have resided there continuously to the present date. Currently, there exists a waiting list of 13 applicants who have been approved for admission. When an opening occurs, the applicant listed first will be received and if, at that time, that person is unable to accept, his name will be placed at the end of the list and the next listed person will be chosen.
The treasurer of Mary’s Manor testified that of the six residents accepted the parents of only one child paid the $5,000 entrance fee. Parents of four were exempted by reason of their families’ involvement in plaintiff’s support group. Although the parent of the fifth disabled adult was not a member *193 of the support group, the fee for his son’s entrance was waived because he lacked the funds and, being 80 years of age, he was unable to be active in the support group.
All six residents in Mary’s Manor qualify for and receive Medicaid. None of them has a bank account, savings account or owns any real property. The residents’ only income are monthly Social Security benefits received by reason of their disabilities. Three of them receive total benefits of $577 a month each and the remaining three each receive $557 a month. These benefits have been assigned to Mary’s Manor and the entire amount is used toward providing training, care, shelter and basic living necessities to the residents. The balance of funds required for their expenses are supplied mainly from donations.
Also residing in the home are the organization’s two professional educators, both of whom have extensive experience in the education and training of mentally handicapped persons. Each is a nun affiliated with a separate religious organization. One of the nuns testified that she has been employed at Mary’s Manor since its opening. She has a Master’s Degree in Administration and Supervision, a Bachelor of Science Degree in Education and has 29 credits towards her Master’s Degree in Business Administration. She is a full-time employee present at the facility on a 24-hour basis. She further testified that the other professional employee has a Master’s Degree in Special Education and for several years has worked with the Dioceses of Camden and Trenton as a developer of special needs programs. The latter nun also is a full-time employee present 24 hours. Each receives compensation of $9,700 annually which sum is forwarded by Mary’s Manor directly to their respective religious organizations and, in turn, the organization sends each of them approximately $200 to $250 a month for sustenance. Both employees additionally are furnished room and board from plaintiff.
These two full-time professionals are primarily responsible for the health, safety and welfare of the residents. They are *194 required to train the residents on basic living skills and formally educate the residents based upon their individual learning capabilities. The ages of the residents are: 29, 35, 38, 43, 53 and 70 years respectively. The two youngest have reading ability of first grade level and the remaining four cannot read at all with the exception, perhaps, of being able to read the words on “Stop” and “Go” signs and similar type words, but not a full sentence. Because of their mental ages, they receive daily instructions in personal hygiene, appropriate dress for work, individual responsibility for chores and other duties, interpersonal skills, accepting the direction of an authority, and appropriate behavior in public places. They are also taught the safe operation of simple machinery as well as some limited formal academics.
With the assistance of the two educators, the residents are participating in a work program at the Career Opportunity Development Center, a sheltered workshop also located in Egg Harbor. The primary purpose of the center is to hire handicapped persons to train and improve their employment potential. The residents work five days a week from 8:15 a.m. until 3:15 in the afternoon and are paid $.62 an hour. They use their pay checks, which average between $7 and $10 a week, for their own personal enjoyment and to purchase gifts for each other.
The evidence presented establishes that the single entrance fee collected and Social Security benefits received were less than the cost for the care, shelter and living expenses provided the six adults and these receipts were insufficient to meet the total expenses of the organization. Mary’s Manor receives no State aid. The bulk of its income is generated by voluntary contributions from the community and from various fund raising events such as a dinner dance, race track dinner, walkathon, playhouse show, golf tourney and yard sale. The total annual income received by the organization from beneficiaries’ fees and assigned benefits was $42,601 whereas its direct care and building expenses were $56,041. The $13,440 shortfall was compensated for by receipts from charitable donations and their fund-raising events.
*195 The township claims that although Mary’s Manor’s operation is laudatory, it is not entitled to an exemption because it receives fees and benefits by or on behalf of its residents and its financial statement reveals that it operated at a net profit, and therefore, it is neither a non-profit organization nor a legally charitable one.
Plaintiff responds that it is both organized and operated exclusively as a non-profit corporation and, although it receives benefits on behalf of its beneficiaries, all of the benefits were used for their direct care and expenses; that the benefits were exceeded by the expenses; and the shortfall was compensated for by charitable donations and fund raising activities thereby proving a charitable purpose.
In Presbyterian Homes v. Div. of Tax. Appeals, 55 N.J. 275, 287, 261 A.2d 143. (1970), our Supreme Court ruled that, although the charging of fees and rentals does not necessarily deny a charitable purpose, the “amount and nature thereof may negate a charitable purpose” under N.J.S.A. 54:4-3.6. However, it is to be noted that Presbyterian Homes’ claim for exemption was based upon that provision of the statute granting tax-exempt status to those organizations organized and operated exclusively for charitable purposes. In the instant case, the section of the statute upon which Mary’s Manor bases its claim does not require a benevolent operation (such as is claimed to be conducted by Mary’s Manor) to also be charitable. Under this claimed portion of N.J.S.A. 54:4-3.6 the standards are:
(a) All of the property for which the exemption is claimed must be owned and used by a non-profit corporation.
(b) The property must be used in connection with its curriculum, work, care, treatment and study of feeble minded, mentally, retarded or idiotic men, women or children.
(c) The corporation must conduct and maintain research or professional training facilities for the care and training for the above-enumerated type of persons.
(d) The buildings or lands on which they stand and the organization using and occupying them as aforesaid are not conducted for profit, except, where the benevolent work therein carried on is supported partly by fees and charges received from or on behalf of beneficiaries using or occupying the buildings, the exemption “shall” be extended to those buildings “provided the building is *196 wholly controlled by and the entire income therefrom, is used for said charitable, benevolent or religious purposes." [Emphasis supplied]
As stated in Presbyterian Homes, supra, “[E]ach claim for tax exemption must be determined upon the facts presented in light of our statutory provisions.” 55 N.J. at 286, 261 A.2d 143; emphasis supplied. Accordingly, if the prior requisites are met, pursuant to the last clause of this portion of the statute, where fees and charges are received, if the building is wholly controlled by the non-profit organization and the entire income therefrom is used for said benevolent purposes, tax exemption is mandated and it is not required that this court ascertain whether the nature of the fees and charges “negate a charitable purpose” as was concluded in Presbyterian Homes. Compare Town of Morristown v. Women’s Club of Morristown, 124 N.J. 605, 592 A.2d 216 (1991) (The plain language of the statute indicates only two requisites for tax exemption: (1) ownership by a non-profit corporation; and (2) certification of the property as an historic site.)
I find and conclude that Mary’s Manor meets all of the statutory requirements of that portion of N.J.S.A. 54:4-3.6 granting tax exemption to property used in connection with the care and training of mentally retarded persons. The subject property is owned by plaintiff, which I find is a non-profit corporation. The property is used and occupied by plaintiff exclusively in connection with its curriculum, work, care, treatment and study of mentally retarded persons, which is a benevolent purpose. Plaintiff conducts and maintains a professional training facility for the care and training of these disabled persons. The subject buildings and lands are not used or occupied for profit and Mary’s Manor which operates them is not conducted for profit. The benevolent work carried on therein is supported partly by fees and charges received from or on behalf of the beneficiaries using and occupying the buildings. The buildings, however, are wholly controlled by Mary’s Manor and the entire income therefrom is used for the aforesaid benevolent purposes, to wit: providing training, care shelter and basic living necessities to the residents.
*197 Accordingly, by reason of this conclusion, it is not necessary to address the township’s claim that plaintiff’s operation is not a legally charitable operation. Since the organized purposes of Mary’s Manor and the use and occupancy of its property are in compliance with the statutory requirements of that portion of N.J.S.A. 54:4-3.6 pertaining to mentally disabled persons, its property is entitled to tax-exempt status. The judgment of the county board of taxation is reversed and judgment will be entered exempting the subject property from taxation.