SMALL, J.T.C.
This case requires me to determine whether the portion of the land and improvements of a commercial condominium owned and occupied by Planned Parenthood of Greater Northern New Jersey (“Planned Parenthood”) is exempt from local property taxation pursuant to N.J.S.A. 54:4-3.6 (the “statute”).
Planned Parenthood’s application for tax exemption pursuant to N.J.S.A. 54:4-3.6 for Block 506, Lot 42 and Block 507, Lot 18, for the tax year 1990, was denied by the assessor of Hackensack. The Bergen County Board of Taxation upheld the assessor’s denial of the exemption and this action followed. My analysis of the facts and the law leads me to conclude that the determinations of the assessor and the county board were incorrect and that both parcels qualify for the requested exemption.
Planned Parenthood and its predecessor organizations have been organized since 1937 as a not-for-profit corporation under Title 15A and its predecessor statutes. Its principal office is at 575 Main Street in Hackensack. Its interest in this property is the subject of this action.
In 1985, the Appellate Division found that the exemption from local property taxation authorized by N.J.S.A. 54:4-3.6 did not apply to plaintiff’s interest in the subject property on the sole ground that at that time part of the property was leased to and used by the State of New Jersey, a non-qualifying organization.[1] Since 1988, however, the State has vacated that space. *602 In 1989, a condominium association was formed and a master deed filed. N.J.S.A. 46:8B-1 et seq. Planned Parenthood now owns the second floor, as well as 53% of the common elements of the condominium. The Children’s Aid and Adoption Society (“CAAS”), a nonprofit charitable organization, owns the first floor (the space formerly occupied by the State) and the remaining 47% of the common elements of the condominium.
The subject property’s parking lot is located immediately across the street from the building and is part of the common elements of the condominium association, although listed and taxed as a separate line item for real property tax purposes.
Having found that occupancy by CAAS, unlike occupancy by the State of New Jersey, would have qualified Planned Parenthood for an exemption in 1982 under the earlier Appellate Division decision, it would be simple to conclude my analysis. Four considerations prevent that. (1) A qualification for an exemption is not permanent. Taxable status, like value, must be determined on an annual basis as there may be a change in the use or ownership of the property. N.J.S.A. 54:4-4.4; Boys’ Club of Clifton, Inc. v. Township of Jefferson, 72 N.J. 389, 405, 371 A.2d 22 (1977); Division of Taxation, Handbook for New Jersey Assessors § 320.1 (1989). (2) The statute, N.J.S.A. 54:4-3.6, was amended in 1985, modifying the language which grants the exemption claimed by Planned Parenthood.* [2] (3) Between *603 1982 and 1989 the property was converted to a condominium form of ownership. See generally N.J.S.A. 46:8B-1 et seq. What might have been exempt if owned by Planned Parenthood and used exclusively by a qualifying tenant may not be eligible for exemption if held as a condominium. (4) In 1985, the Appellate Division, as cited above, concluded that Planned Parenthood did not qualify for the exemption as a result of the non-exclusive use of the property for charitable purposes, therefore, it did not need to thoroughly examine whether Planned Parenthood met the exemption statute’s other requirements. Furthermore, it appears that in the prior litigation Hackensack did not challenge Planned Parenthood’s qualifications as a charitable organization under N.J.S.A. 54:4-3.6. In this case it does. The court’s statement that Planned Parenthood would have qualified (but for its non-exclusive use) was not a holding of that case.
/.

Facts.

At trial, Jeffrey Brand, the Executive Director of Planned Parenthood, testified as to its organization and operation. Sev *604 eral documents were placed into evidence to support his testimony.[3]
Planned Parenthood is exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code, and is recognized as a tax exempt organization by the United States Post Office. It is exempt from sales tax (N.J.S.A. 54:32B-1 et seq.) and corporation business tax (N.J.S.A. 54.-10A-1 et seq.) by the State of New Jersey.[4] N.J.S.A. 54:32B-9(b)(l) and N.J.S.A. 54:10A-3(e).
The corporate charter specifies the three purposes for which Planned Parenthood is organized:
The purpose for which this corporation is formed are [1] to promote scientific research and education relating to the medical, sociological, economic and public health aspects of birth control; [2] to operate a medically supervised center where underprivileged mothers may receive contraceptive information or treatment when prescribed by physicians in conformity with the laws of the State of New Jersey; and [3] to operate with state or national birth control leagues in the exchange of information and data for the purposes of maintaining efficient and high standards of medical service and in gathering the scientific records and data used by such leagues.
The testimony of Brand and the by-laws confirm that Planned Parenthood is organized and operated consistent with its corporate charter. The by-laws state that its purpose is:
*605 [t]o improve health and quality of life for individuals, families and society by educating people about family planning and reproductive rights, and providing quality reproductive health care.
Forty-five percent of the approximately 7,000 reproductive health care patients seen by Planned Parenthood each year have incomes either at or below the poverty level set by the federal government, and 8% of those patients are eligible for Medicaid as a consequence of their income. Further, a substantial portion of Plaintiffs clients have no other health care. Plaintiff provides medical care without regard to ability to pay in the form of gynecological examinations, contraception, cancer screening, AIDS testing, testing and treatment of venereal disease, and all forms of reproductive health care.
The fees charged are generally significantly lower than private sector fees, often only a few dollars above cost for examinations, tests, and medication. Fees are based on a sliding scale incorporating both family size and income level and adjustments can be made to the fees based on specific personal needs. While patients are encouraged to pay for services received, no patient is ever turned away due to an inability to pay, nor is payment pursued through collection agencies or litigation.
Approximately 50% of Planned Parenthood’s operating budget comes from public funds, private contributions, and service fees. Of that amount, private contributions represent between 17% and 24%. Fees charged to clients represent only 36% to 38% of the annual operating expenses of Planned Parenthood.
Brand further testified that much of the clerical and administrative work is done by unpaid volunteers. The medical staff is composed of doctors, nurses, and nurse practitioners. The nurses and nurse practitioners are paid salaries significantly below market rates. Physicians are also paid less than market wages. Brand testified that the physicians’ wages are so low that they are almost “volunteers” in fact.
Planned Parenthood has an extensive library and educational facility through which it offers educational materials and training. These educational materials and services are often provid *606 ed free of charge; some are available only for a fee. Although some activities of this educational program may in fact have receipts greater than their expenses, any such surplus is absorbed by the deficits in other areas of Planned Parenthood’s programs. Receipts from educational activities in 1988 and 1989 were 5.2% and 6.9%, respectively, of Planned Parenthood’s revenues in those years. Regardless of the surplus these operations generate, Brand’s testimony indicated that Planned Parenthood’s operating expenses exceeded its operating income for 1990, and that this was generally the case in other years. The budget is balanced by fundraising. In the event of a cash surplus in any year, that amount is carried over to the next year.
The parking lot is directly across the street from the building shared by Planned Parenthood and CAAS. In fact, it is part of the common elements of the condominium association, for which CAAS is not taxed. The parking spaces are used by employees and volunteers of CAAS and Planned Parenthood. There is no specific assignment of spaces to one organization or another. There are approximately 25 parking spaces available in the lot, and there are approximately 10 to 15 staff members present at any one time at the Planned Parenthood office.

II.

The Improved Parcel.

A. The Statutory Framework.
The fundamental approach of our statutes is that ordinarily all property shall bear its just and equal share of the public burden of taxation____ Under N.J.S.A. 54:4-3.6, exemption from taxation is tested by exclusiveness both of the organization’s purpose and of the property’s actual use for the moral and mental improvement of men, women and children or for religious charitable or hospital purposes. The burden of proving tax-exempt status is upon the claimant.
[Presbyterian Homes v. Division of Tax Appeals, 55 N.J. 275, 283, 261 A.2d 143 (1970)]
Plaintiff requests an exemption pursuant to N.J.S.A. 54:4-3.6, which states in part:
The following property shall be exempt from taxation under this chapter:
*607 all buildings actually used in the work of associations and corporations organized exclusively for the moral and mental improvement of men, women and children
all buildings actually and exclusively used in the work of associations and corporations organized exclusively for religious or charitable purposes;
provided, in the case of all of the foregoing, the buildings, the lands on which they stand, or the associations, corporations or institutions using and occupying them as aforesaid, are not conducted for profit.
Our Supreme Court set out a clear framework for analyzing cases of claimed exemptions under N.J.S.A. 54:4-3.6 in Paper Mill Playhouse v. Millburn, 95 N.J. 503, 506, 472 A.2d 517 (1984). There is a three part test:
1. The entity claiming exemption must be exclusively organized for a tax exempt purpose.
2. The property must be actually and exclusively used for a tax exempt purpose.[5]
3. The operation and use of the property must not be conducted for profit.
In the case before me there is no question that the activities of Planned Parenthood are not conducted for profit; thus, I must turn to the other two parts of the test (organization and use) and analyze the decided case law as it applies to the facts in this case. “[E]aeh claim for tax exemption must be determined upon the facts presented in light of our statutory provision.” Presbyterian Homes v. Division of Tax Appeals, supra, 55 N.J. at 286, 261 A.2d 143.
*608 B. The 1985 Amendments to N.J.S.A. 54:4-3.6.
Prior to the amendment of the statute in 1985, its language granted exemptions so long as the organization and use of the property was for one or more of the following purposes:
(1) moral and mental improvement of men, women and children
(2) religious or
(3) charitable
The principal case law in this field antedates the 1985 amendment to the statute: Paper Mill Playhouse, supra, (1984), Presbyterian Homes, supra, (1970), Catholic Charities v. City of Pleasantville, 109 N.J.Super. 475, 263 A.2d 803 (App.Div.1970), Church Contribution Trust v. Mendham, 9 N.J.Tax 299 (1987), modified and aff'd, 224 N.J.Super. 643, 541 A.2d 249 (App.Div.1988) (with reference to the 1985 tax assessment), Princeton Univ. Press v. Borough of Princeton, 35 N.J. 209, 172 A.2d 420 (1961), Schizophrenia Found. of New Jersey v. Montgomery, 6 N.J.Tax 594 (1984), Town of Bloomfield v. Academy of Medicine, 47 N.J. 358, 221 A.2d 15 (1966). Thus, their discussion of whether an association was organized, and used the property, for one or another of the listed exempt purposes did not matter (as a matter of law) so long as it was organized for one or more of those purposes and used for one or more of those purposes even if the purpose for which it was organized was not the same as the purpose for which it was used.
The plain meaning of the 1985 amendment, (although there is no evidence that the Legislature intended to do so), had the effect of requiring that, to be exempt from property taxation, property owned by moral and mental improvement organizations must be used solely for those purposes and property owned by charitable and religious organizations must be used solely for those purposes. Thus, prior to the amendment of the statute a moral and mental improvement organization’s use for exclusively charitable purposes or for charitable and moral and mental improvement purposes would qualify. After the amendment, to be exempt from local property taxation the property of a moral and mental improvement organization must be used for *609 moral and mental improvement purposes and the property of an organization organized for exclusively charitable purposes must be used only for charitable purposes. The practical implications of this analysis for this case comes from a reading of Planned Parenthood’s corporate charter, previously referred to at page 604, of this opinion. Purpose one and purpose three are clearly for moral and mental improvement. Purpose two is clearly charitable. But, Planned Parenthood is not exclusively organized for charitable purposes. Thus, we turn to a separate analysis of the two different tests.
C. Charitable Organization omd Use.
1. Organization.
Is Planned Parenthood organized exclusively for charitable purposes? Although clearly nonprofit and eligible to accept tax-deductible contributions under the Internal Revenue Code, the purpose clause of the corporate charter and the by-law cited above do not restrict Planned Parenthood to conducting its activities in the charitable manner which now characterizes their use of the subject premises. In Catholic Charities v. City of Pleasantville, supra, the certificate of incorporation provided: “[t]he purposes for which this corporation is formed shall be for religious and charitable purposes and for the moral, mental and physical improvement of men, women and children.” 109 N.J.Super. at 479, 263 A.2d 803. Thus, the activities of the “charity” in that case were restricted by using the same language as the statute.
Planned Parenthood is restricted by its charter to provide its gynecological and other reproductive health care services to “under-privileged mothers.” Planned Parenthood could not, without violating its charter, operate with a market rate fee schedule, as did the nursing home operators in Presbyterian Homes, supra, and in Woods Court v. Woodstown, 12 N.J.Tax 197 (1992) and the counsellors in Church Contribution Trust v. Mendham, supra. Thus, although this part of its activities must be charitable, the scientific research, education, and infor *610 mation sharing purposes of Planned Parenthood, though commendable, are not charitable within the meaning of N.J.S.A. 54:4-9.6.
Accordingly, I find that the gynecological, birth control, and other reproductive health care services offered by Planned Parenthood meet the charitable organization tests because the corporate charter restricts the provision of those services to under-privileged women. However, the corporate charter permits two other activities: (1) scientific research and education and (2) information sharing with other birth control leagues. Neither of these two activities is limited to under-privileged women. Therefore, Planned Parenthood is not organized exclusively for charitable purposes.[6]
2. Use.
Having found that Planned Parenthood does not meet the charitable organization test, it is not essential for my ultimate determination to discuss the charitable use of the property. Nevertheless, the parties have addressed this issue with some *611 care and it does have some bearing on our understanding of the property’s use for moral and mental improvement. See II.D. infra.
Although an activity may be conducted without a profit and for the most laudable of purposes those two attributes alone do not make it charitable. Presbyterian Homes v. Division of Tax Appeals, 55 N.J. 275, 284-288, 261 A.2d 143 (1970). See, also, Catholic Charities, supra, 109 N.J.Super. at 483, 263 A.2d 803. Our Supreme Court has imposed an additional test for the finding of a charitable purpose: “if the charitable work were not being done by a private party it would have to be undertaken at public expense.” Presbyterian Homes, supra, 55 N.J. at 285, 261 A.2d 143. Our Supreme Court has further indicated that “the determination of whether property is devoted to charitable purposes depends on the facts and circumstances of each case.” Ibid.
Our courts have examined the activities of several nonprofit entities which charge fees to their clients. In some cases the courts have ruled that the entities are entitled to an exemption from local property tax. Paper Mill Playhouse, supra; Catholic Charities, supra; Mary’s Manor, Inc. v. Galloway, 12 N.J.Tax 189 (1991). In other cases the courts have ruled that they are subject to tax: Presbyterian Homes, supra, Church Contribution Trust, supra, Woods Court, supra. In Presbyterian Homes, supra, and Woods Court, supra, the courts ruled that nonprofit nursing homes that charged market rate fees, did not receive substantial charitable contributions, had clients who generally paid their own way and who would have therefore been cared for in proprietary nursing homes rather than becoming public charges had these homes not existed, were not charitable within the meaning of N.J.S.A. 54:4-3.6. Similarly, in Church Contribution Trust, supra, this court and the Appellate Division found that individual one-on-one services would not disqualify a counseling service from charitable tax exemption under N.J.S.A. 54:4-3.6. However, when the fees charged and retained by those practicing in the facility resem *612 bled market fees and no effort was made to provide services primarily for indigents and those unable to pay for services, the exemption would be denied. In that case the court determined that, although fees may have been slightly below the market, its activities were not distinguishable from those of “private practitioners who may occasionally lower their rates.” Church Contributions Trust, supra, 9 N.J.Tax at 314.
In Catholic Charities v. City of Pleasantville, supra, the court found a tax exempt charitable use where a nursing home charged no more than $90 a week (and less for welfare and medicare patients) as compared to the between $125 and $140 per week (plus supplemental charges) imposed by a proprietary nursing home. In Mary’s Manor, Inc., supra, which was decided under a different section of N.J.S.A. 54:4-3.6 (relating to the care and training of feeble-minded, retarded, etc., men, women, and children) Judge Lario, in granting the exemption, discussed in some detail, although not essential to his determination, the low fee structure and pay scale of employees and the need to secure charitable donations to make up a short-fall of almost one quarter of the home’s operating budget.
I find that but for the gynecological and reproductive health care services provided by Planned Parenthood at substantially below market rates to the vast majority of its clients, nearly one half of whom have poverty level incomes, such services would be available, if at all, only from other charitable organizations, the charitable provision of services by others, or the government. Thus, I find that the gynecological and reproductive health care services provided by Planned Parenthood do constitute an actual charitable use for purposes of N.J.S.A. 54:4-3.6.
The educational services provided by Planned Parenthood raise another issue. In Princeton Univ. Press v. Princeton, supra, the non-scholarly publishing and printing activities of a university press were profitable and provided over 50% of the net revenues of the entity. This large component of commercial profit-making activity coupled with the substantial net *613 profits of the press led our Supreme Court to find that the exclusive use test could not be met. In the instant case, those profits were non-existent and the non-gynecological reproductive health care service revenues constituted at all times less than 1% of net revenues. Such de minimis ancillary activities of Planned Parenthood, though clearly not charitable in their own right (the government would probably not provide such services) qualifies for that section of the statute providing tax exemption for entities organized for the moral and mental improvement of men, women, and children. N.J.S.A. 54:4-3.6. See discussion at II.D., infra.
Accordingly, I find that the subject premises are actually used for a charitable purpose.
In Presbyterian Homes, Woods Court, and Church Contribution Trust, the courts did not address the issue of charitable organization, having found that those nursing homes were not actually charitable in their operations. Even though I have found that Planned Parenthood’s operations are charitable, they do not qualify for the charitable exemption under N.J.S.A. 54:4-3.6. This is because the property owner desiring the exemption must meet both the organization test and the use test. Planned Parenthood meets only the use test. I note that of the three “purposes” for Planned Parenthood found in its corporate charter only one of those purposes, the provision of contraceptive information and treatment is charitable in nature because Planned Parenthood is limited to providing those services to under-privileged women.
D. Mental and Moral Improvement Organization and Use.
Having found that Planned Parenthood’s claim for exemption meets the criteria of charitable use but fails the standard of exclusive charitable purpose and thus would not qualify for exemption from taxation under that section of N.J.S.A. 54:4-3.6, I turn to its entitlement to exemption under the moral and mental improvement section of the statute.
*614 In Bloomfield, v. Academy of Medicine, supra, our Supreme Court found a nonprofit association formed for “pathological and anatomical study and investigation, and the advancement and promotion of medical and surgical science, by such means as to them shall appear expedient and proper, and also maintenance of a public medical library,” 47 N.J. at 362, 221 A.2d 15, qualified under N.J.S.A. 54:4-3.6 as an organization organized exclusively for moral and mental improvement, etc. In Schizophrenia Found, v. Montgomery, supra, this court found that an entity which, among other objectives, had as its stated purpose “to assist the schizophrenic patient to rehabilitate and readjust to society,” 6 N.J.Tax at 598, was organized exclusively for the moral and mental improvement of men, women, and children. 6 N.J.Tax at 601, citing Paper Mill Playhouse, supra, 95 N.J. at 512-14, 472 A.2d 517. I find that on its face all of those portions of the charter and by-laws of Planned Parenthood except those dealing with the provision of gynecological services cited above are consistent with those purposes found to meet the criteria of moral and mental improvement as set out in Paper Mill Playhouse, supra, Academy of Medicine, supra, and Schizophrenia Found., supra, to support a finding of exempt purpose.
What resulted in the denial of an exemption to the Schizophrenia Foundation was the actual use of the property which exceeded its corporate purpose. Practitioners at that foundation saw 900 to 1000 patients a year who paid rates nearly identical to those in private commercial facilities. 6 N.J.Tax at 603-04. See, also, City of Long Branch v. Monmouth Medical Center, 138 N.J.Super. 524, 351 A.2d 756 (App.Div.1976), aff'd, 73 N.J. 179, 373 A.2d 651 (1977) where certain facilities of the hospital used by private practitioners in market fee operations were held to be non-exempt. See, also, Church Contribution Trust, supra. In the case before me the vast majority of patients paid below market rates in a practice which I have already found was operated in a charitable manner.
Although the charitable provision of contraceptive information or treatment of under-privileged mothers, in and of itself, *615 might not constitute the moral and mental improvement of men, women, and children, the provision of those services in the context of (1) promoting scientific research and education and (2) exchanging information and data for the maintenance of high standards of medical services does meet the broad standards of providing for the moral and mental improvement of men, women, and children mandated by the decisions in Paper Mill Playhouse, Bloomfield v. Academy of Medicine and Schizophrenia Found.
Thus, I find that Planned Parenthood is organized exclusively for the moral and mental improvement of men, women, and children and is operated exclusively for those purposes.
E. Shared Use with CAAS.
Planned Parenthood has used the subject property since 1979. Under the statute, exclusive use requires that the property be used exclusively for exempt purposes. During the State’s occupancy of the first floor, and prior to the amendment of the statute in 1985, Planned Parenthood could not lay claim to exclusive use due to the tenancy by a non-exempt entity, regardless of whether Planned Parenthood’s actual use qualified it for exemption. During 1989, the subject building and its property were occupied only by Planned Parenthood.[7] The subject property was used exclusively by Planned Parenthood in 1989. The tax exempt status for the 1990 tax year is determined as of October 1, 1989. Atlantic City New School, Inc. v. City of Pleasantville, 2 N.J.Tax 192, 197 (1981).
*616 The condominium association was not formed until October 17, 1989. Pursuant to N.J.S.A. 46:8B-1 et seq. (the condominium law) and N.J.S.A. 54:4-3.6, so long as Planned Parenthood qualifies for the exemption, the ownership and use of the other condominium unit does not effect Planned Parenthood’s exemption status. See Perth Amboy General Hosp. v. City of Perth Amboy, 176 N.J.Super. 307, 422 A.2d 1331 (App.Div.1980):
These two sections [of the condominium law] clearly indicate a legislative design to treat each unit in a condominium as separate property and to accord each unit the same tax exemption applicable to other separate property. Thus viewed a condominium unit is for tax purposes an exclusive and separate unit despite the fact that by definition any condominium owner shares undivided interests in common with others.
[at 312, 422 A.2d 1331]
In Perth Amboy General Hosp., the Appellate Division held that doctors’ and nurses’ apartments owned by the hospital and qualified for tax exemption would not lose that exemption because other apartments in the condominium residence and a portion of the common elements were owned by non-exempt individuals. Thus, the exclusive use test with regard to the shared use of a single structure by a qualifying organization is more easily met than it was in the 1985 case {see, n. 1, supra). The statute changed, the form of ownership changed, the other occupant of 575 Main Street changed.
I note also that the express purpose of the 1985 amendment to N.J.S.A. 54:4-3.6 was to permit an organization exempt from taxation under the moral and mental improvement portion of the statute to retain its tax exemption on its partial interest in real property no matter who occupied and used the other parts of the property. See, n. 2, supra at pages 602 and 603.

III.

The Parking Lot.

A part of the parking lot located across the street from the Planned Parenthood office is also owned by Planned Parent *617 hood as part of the common elements of the condominium association and is included in this appeal. The two lots, although separated by a public street, are part of a single tax appeal under the court rule which considers such property contiguous for filing purposes. R. 8:3-5(a)(2). N.J.S.A. 54:4-3.6 is clear, it exempts from taxation improvements and contiguous property necessary to the enjoyment of the building and not used for another purpose. See Boys’ Club of Clifton, Inc. v. Township of Jefferson, supra, 72 N.J. at 395-96, 371 A.2d 22.
Parking is essential for the staff of Planned Parenthood. Brand’s testimony indicated that Planned Parenthood considered it a strong enticement for its employees, who are predominantly female, to have an available parking area which is close to the offices. He cited safety as a major factor in providing parking for its employees. Both night-time security and limited off-street parking make the provision of on-site parking by employers for their employees to be common in this part of the State.
In City of Hackensack v. Hackensack Medical Center, 9 N.J.Tax 460 (1988), aff'd, 228 N.J.Super. 310, 549 A.2d 869 (App.Div.1988), Judge Crabtree held that a parking lot on which only a guardhouse was erected, which was several blocks from the hospital it serviced, was not exempt. The distinction made there was that the property was unimproved land and did not adjoin the property on which the hospital was erected.
In Congregation B’Nai Yisroel v. Millburn, 35 N.J.Super. 67, 113 A.2d 182 (App.Div.1955), the court held that a parking lot which belonged to an exempt house of worship but was across the street from that structure was exempt from real property taxation. In a thoroughly researched and well-reasoned opinion, the late Judge Clapp stated “we see no basis for reading into the statute as a matter of legal necessity, a requirement that the land, to be exempt, must be on one side of a street----” Id. at 72, 113 A.2d 182. (Cited with approval by *618 Justice Schreiber in Boys’ Club of Clifton, Inc. v. Township of Jefferson, 72 N.J. 389, 402, 371 A.2d 22 (1977)).
Although Hackensack Medical Center, supra, held that an unimproved parking lot located four or five blocks away from the exempt building was too remote to be included in the exemption granted to the building, Congregation B’Nai Yisroel, supra, extended the exemption to a parking lot across the street from an exempt building.
Given the intent implied in Rule 8:3-5(a)(2), which permits the filing of a single appeal for two parcels which are contiguous but for their separation by a public right of way, and the holding of Congregation B’Nai Yisroel, I find that the two parcels under appeal are contiguous. Thus, the parking lot parcel is exempt from taxation under N.J.S.A. 54:4-3.6.

IV.

I find that Planned Parenthood, although a nonprofit and federally qualified charitable organization which used its facility at 575 Main Street for exclusively charitable purposes is not organized for exclusively charitable purposes within the meaning of N.J.S.A. 54:4-3.6. However, I find that Planned Parenthood is exclusively organized and its facility at 575 Main Street was used in 1989 and 1990 for the moral and mental improvement of men, women, and children. Accordingly the improved parcel is exempt from real property tax for the year 1990.
I further find that the parking lot located across the street from the improved parcel is contiguous with the improved parcel and is therefore exempt from taxation for the year 1990.
The Clerk of the Tax Court will enter a judgment in accordance with this opinion.

 Under R. 1:36-3 unpublished opinions are not to be cited. The portion of the statute relied on by Planned Parenthood in that case conditioned qualification for the exemption on the property’s exclusive use in the work of corporations organized for charitable purposes. N.J.S.A. 54:4-3.6. Though the Appellate Division was dealing with the same piece of real estate and the same *602 parties—each year constitutes a separate cause of action for real property tax assessments. N.J.S.A. 54:4-4.4. The determination in that case is not the law of this case or a binding precedent.

 For taxes payable for calendar years before 1986 the statute exempted ... “all buildings actually and exclusively used in the work of associations and corporations organized exclusively for the moral and mental improvement of men, women and children, or for religious or charitable purposes, or for one or more such purposes;"
Z..1985, c. 395, § 1 split the exemption into two distinct classes as follows: [1] all buildings actually used in the work of associations and corporations organized exclusively for the moral and mental improvement of men, women and children, provided that if any portion of a building used for that purpose is leased to profit-making organizations or is otherwise used *603 for purposes which are not themselves exempt from taxation, that portion shall be subject to taxation and the remaining portion only shall be exempt; [2] all buildings actually and exclusively used in the work of associations and corporations organized exclusively for religious or charitable purposes.
The stated purpose of the bill amending the statute was set forth by the Governor in his Reconsideration and Recommendation Statement on Assembly Bill 2246 (1985).
The purpose of this bill is to allow associations for the moral and mental improvement of men, women and children to receive a partial real property tax exemption for buildings partially used for their own charitable purposes and partially used for non-exempt purposes or leased to profit-making tenants. Under current law, each separately assessed structure must be exclusively used for exempt purposes for the exemption to apply. This bill would allow an exemption to apply to that portion of any building actually used in connection with tax-exempt functions. Similar treatment has been provided for hospitals (P.L.1983, c. 224) and educational institutions. (P.L.1977, c. 370).

 These include: the by-Laws of Planned Parenthood, location survey, federal income and state sales tax exemption certificates, miscellaneous Planned Parenthood materials for distribution, Planned Parenthood fee schedule, certificate of good standing, and financial statements. Subsequent to the trial the court requested and received a copy of the corporate charter. Evid.R. 12(1) and 12(3).

 None of the qualifications for these exemptions is identical to the qualifications for exemption from New Jersey’s real property tax, N.J.S.A. 54:4-3.6. In fact the qualifications under N.J.S.A. 54:4-3.6 are more restrictive than those of the above-cited statutes. Nevertheless, Planned Parenthood’s qualifications under these statutes is indicative of the character of the organization. "Federal income tax exemption standards have no relation to state law governing property tax exemption.” Paper Mill Playhouse v. Millburn, 95 N.J. 503, 529, n. 2, 472 A.2d 517 (1984) (Clifford, J., dissenting) (citing Presbyterian Homes v. Division of Tax Appeals, 55 N.J. 275, 261 A.2d 143 (1970)).

 Note that since the 1984 decision in Paper Mill Playhouse the statute was amended to allow a corporation organized for moral and mental improvement to enjoy partial tax exemption even if it shares occupancy with a non-qualifying entity; charitable corporations may not enjoy an exemption if they share occupancy with anyone other than a charitable entity. See, supra n. 2

 At least one judge of this court has indicated that the phrase "organized exclusively" in N.J.S.A. 54:4-3.6 refers to the conduct of the organization, how it is actually structured and run. Intercare Health Systems, Inc. v. Cedar Grove, 11 N.J.Tax 423, 430-31 (1990), aff’d, 12 N.J. Tax 273 (App.Div.1991). However, I believe the better view is that the term “organized” in the statute refers to the entity’s organizational documents, its corporate charter. See, for example, the per curiam opinion of the Appellate Division in Intercare Health Systems, supra, 12 N.J.Tax at 273. "Furthermore, according to Hartwyck's certificate of incorporation [i]ts stated corporate purposes do not include operating a hospital. Therefore, Hartwyck fails to satisfy the statutory requirement that the corporation claiming the exemption must have been incorporated for hospital purposes." 12 N.J.Tax at 275; emphasis added.
See, also, Mary’s Manor, Inc. v. Galloway, 12 N.J.Tax 189, 190-91 (1991); Woods Court v. Woodstown, 12 N.J.Tax at 204-05; Paper Mill Playhouse, supra, "we have no doubt that Paper Mill’s stated purpose____” 95 N.J. at 514, 472 A.2d 517; emphasis added.
See, also, Schizophrenia Found, v. Montgomery, supra, 6 N.J.Tax at 601-2: “The original purpose of the organization, as stated in its certificate of incorporation ... clearly comports with the legislative design____" 6 N.J.Tax at 601-02, emphasis added (cited in Church Contribution Trust, supra, 9 N.J.Tax at 310).

 On October 17, 1989, the condominium plans were approved and CAAS had begun to ready the quarters for its future occupancy. Thus, while it was physically present to some extent, CAAS was not present to a sufficient degree to allow it to "use" the premises. Further, to the extent CAAS was present, it was "using" its portion of the condominium only, leaving Planned Parenthood the sole and exclusive user of the space in issue. The assessor has found that CAAS was exempt from tax on its portion of the condominium property in 1990, the first year of its use, so Planned Parenthood’s exemption application should not be affected by shared use with another qualifying exempt organization. Also, the 1985 amendment to N.J.S.A. 54:3-3.6 relaxed the qualifications for exemption when occupancy was shared with another entity.