BIANCO, J.T.C.
This matter comes before the Tax Court by way of appeal from the judgment of Warren County Board of Taxation (“County Board”) dismissing the matter with prejiidice. Plaintiff, Phillips-burg Riverview Organization (“PRO”), challenges the denial of a property tax exemption pursuant to N.J.S.A. 54:4-3.6 with regard to its property located within the defendant, Town of Phillipsburg (“Phillipsburg”), at 68 South Main Street, and designated as Block 917, Lot 4 (“the Subject Property”). For the reasons set forth in this opinion, the property tax exemption sought by PRO for the Subject Property is denied in part and granted in part.
The relevant facts giving rise to this appeal are as follows:
*170 PRO is a not-for-profit corporation organized under the laws of New Jersey. As stated in PRO’s Articles of Incorporation, the purpose of the corporation is:
[T]he promotion of public interest in local architecture, history and traditions, and the restoration and preservation of properties from a historical perspective.
Furthermore, Article II, Section B of PRO’s By-Laws provides that it is organized “exclusively for charitable, educational and scientific purposes.” Article II, Section E of PRO’s By-Laws states that PRO’s objectives are:
(1) The promotion of public interest in local architecture, history and traditions; and, the restoration, preservation and maintenance of properties from a historic perspective. PRO will seek local, state and national recognition of a historic district in Phillipsburg.
(2) The promotion of public interest in the Delaware River region as a valuable resource. PRO will work to create a greenway along the river and its tributaries.
(3) The protection of the Highlands areas in nearby Warren County and Hunter-don County so as to safeguard the water sources of the Delaware River from degradation resulting from inappropriate land use.
(4) The promotion of public interest in the arts and in culture through the Riverview Arts Center, a cultural center created by PRO with an emphasis on education.
(5) The promotion of public parking in the downtown business area so that ample spaces exist for residents and business people and their customers, to provide for today’s needs and allow for future growth.
(6) Promote improvement and rebuilding of Phillipsburg’s infrastructure; the promotion of beautification laws; and the creation of a business-friendly area in Phillipsburg’s downtown business area.
(7) Be responsive to needs that affect the citizens of Warren and Hunterdon Counties as determined by the Board of Directors.
(8) To create a Land Trust for the preservation of farmland, forest and open space.
PRO also qualifies as a not-for-profit charitable organization within the meaning of Section 501(c)(3) of the Internal Revenue Code of 1986, as amended, and therefore is exempt from federal income tax.[1]
The Subject Property is essentially operated by PRO as an Arts Center that is open to the public and is utilized to support and *171 promote the performing and visual arts in Phillipsburg and the surrounding area by providing affordable studio space and creating community-based arts programs. The Subject Property consists of an approximately 5,500 square foot building that includes classroom space, gallery-shop space, artists in residence studio space, and a sculpture, glass and ceramic area. In addition, a large ballroom is located on the second floor that accommodates dance and theater workshops and larger art classes. Also, the Subject Property has office space located in the basement of the Arts Center that is utilized by PRO’s Environmental Resource Center, whose mission is to discourage inappropriate land use and protect natural resources through preservation. PRO purchased the Subject Property on January 20, 1992 for the sum of one dollar. The Subject Property has qualified for tax exempt status from the time it first filed for an exemption in 1992 through the 2009 tax year.
At or about the assessment date of October 1, 2009 for the 2010 tax year at issue, studio space at the Subject Property was utilized by the Xochiquetzal Group Mexicano Folklórico dance group, the Lehigh Valley Cloggers and White Crane Karate.[2] In addition, the Subject Property was open five weekends during the winter of 2009 to Holiday Crafting with local Girl Scout Troops; poetry readings were held there once a month free of charge;[3] community service workers were permitted on Sundays; and instructive basic visual arts classes were conducted. Furthermore, artists utilized studio space at the Subject Property for their private works and also held several Art Expos there. Further details as to how some of these entities operated at the Subject Property and their arrangements with PRO will be discussed later in this opinion. Also, PRO’s Environmental Resource Center used the *172 office space to conduct their daily operations in order to obtain funding to carry out their mission.
On September 17, 1992 PRO filed an Initial Statement “FOR AN EXEMPTION OF REAL PROPERTY FROM TAXATION PURSUANT TO N.J.S.A. 54:4-4.4” which was granted for the Subject Property. Thereafter, in order to maintain the tax exempt status of the Subject Property, PRO filed a Further Statement in three-year intervals.* [4] For the 2010 year, Phillipsburg’s Tax Assessor, Lydia Schmidt (“Ms. Schmidt”) could not locate the current Further Statement. She asked PRO to provide a copy, however, according to Ms. Schmidt’s letter to PRO dated January 26, 2010, “[t]he Further Statement was not received ... until January 13, 2010. The Tax List for the year 2010 book closed on January 12, 2010.” Accordingly, the Subject Property’s tax exempt status was removed for the year 2010 due to the lateness of returning the Further Statement. Ms. Schmidt assessed the land and improvements of the Subject Property at $344,600[5] for the 2010 tax year.
Thomas Regrut (“Mr. Regrut”), an officer of PRO, filed a petition of appeal pro se with County Board on April 30, 2010,[6] contesting the denial of the Subject Property’s tax exempt status. On the scheduled hearing date before the Board, the Board’s president, Jane Santini, refused to hear Mr. Regrut’s appeal based on a June 10, 2010 letter received by the Board from an attorney, Mark Rogers[7] on behalf of a rival faction within PRO, challenging *173 Mr. Regrut’s status as an officer and standing to bring the appeal.* [8] The Board dismissed Mr. Regrut’s appeal with prejudice. The Board’s judgment dated June 30, 2010, lists the judgment code as “5F” meaning “Dismissal with prejudice-other” and states “cannot determine who is in charge.”[9]
This appeal followed.
While ordinarily a presumption of correctness attaches to a judgment of a County Board of Taxation, no such presumption attaches to the Board’s judgment in this matter since the Board’s decision was not based on the merits of the case. Schimpf v. Township of Little Egg Harbor, 14 N.J.Tax 338, 343 (Tax 1994). The facts indicate that the basis for Board’s dismissal was predicated upon un-sworn and uncorroborated information contained in a letter from an attorney representing a rival faction within PRO. That information cast doubt upon the standing of the moving faction to proceed with the matter before the Board resulting in the Board’s dismissal thereof. In this court’s view, justice would have been better served had the Board taken the time to sort out the facts before hastily dismissing PRO’s appeal with prejudice. See Greate Bay Hotel & Casino v. City of Atlantic City, 21 N.J.Tax 122, 128 (App.Div.2003) (where the court acknowledges *174 the county board’s discretion to dismiss without prejudice as a technique for deferring the evidentiary evaluation hearing to the Tax Court). N.J.S.A. 54:3-22a requires that “[a]ll appeals filed pursuant to the provisions of Chapter 3 of Title 54 of the Revised Statutes shall be heard and determined by the board.” Id. (emphasis added); See also Create Bay Hotel & Casino supra, 21 N.J.Tax at 126. That did not happen in PRO’s ease.
The dismissal of PRO’s case before the Board was the culmination of months of curious events surrounding the struggle for control of the organization between competing factions and the denial of the Subject Property’s tax exempt status. PRO’s counsel was intent on exploring claims of conspiracy, vendetta, and political intrigue, and, to that end, was allowed limited leeway by the court. That course proved to be of limited value. It did not, in the end, help the court determine whether the Subject Property was entitled to an exemption pursuant to N.J.S.A. 54:4-3.6 for the 2010 tax year. That determination more appropriately rests in the purposes for which PRO was organized and the use being made of the Subject Property; there can be no de facto granting of tax exempt status simply because the Subject Property was tax exempt in the past and (as PRO suggests) others may have conspired to take that exemption away.

Analysis

The requisite legal analysis for determining property tax exemptions is well settled. N.J.S.A. 54:4-3.6, provides in pertinent part that:
The following property shall be exempt from taxation under this chapter: ... all buildings actually used in the work of associations and corporations organized exclusively for the moral and mental improvement of men, women and children, provided that if any portion of a building used for that purpose is leased to profit-making organizations or is otherwise used for purposes which are not themselves exempt from taxation, that portion shall be subject to taxation and the remaining portion only shall be exempt; ... the land whereon any of the buildings hereinbe-fore mentioned are erected, and which may be necessary for the fair enjoyment thereof, and which is devoted to the purposes above mentioned and to no other purpose and does not exceed five acres in extent; ... provided, in case of [ ] the foregoing, the buildings, or the lands on which they stand, or the associations, corporations or institutions using and occupying them as aforesaid, are not conducted for profit!.]
[N.J.S.A. 54:4-3.6.]
*175 “Tax exemption statutes are to be strictly construed against those claiming exemption because of the compelling public policy that all property bear its fair share of the burden of taxation.” Princeton Univ. Press v. Borough of Princeton, 35 N.J. 209, 214, 172 A.2d 420 (1961). “Statutes granting exemption from taxation represent a departure and consequently they are most strongly construed against those claiming exemption.” Ibid. Accordingly, “Lt]he burden of proving a tax-exempt status is upon the claimant.” Ibid. Nevertheless, while the construction of the applicable statute must be strict, it must also be reasonable. Int’l Sch. Serv., Inc. v. Township of West Windsor, 412 N.J.Super. 511, 524, 991 A.2d 848 (App.Div.2010) aff'd, 207 N.J. 3, 21, 21 A.3d 1166 (2011) (citing Township of Princeton v. Tenacre Found,. 69 N.J.Super. 559, 563, 174 A.2d 601 (App.Div.1961)).[10] The rule of strict construction must not defeat the evident legislation design. Ibid.; See also Hunterdon Med. Ctr. v. Township of Readington, 195 N.J. 549, 569, 951 A.2d 931 (2008). To secure an exemption under N.J.S.A. 54:4-3.6, the following three criteria must be met: “(1) [the owner of the property] must be organized exclusively for the [exempt purpose]; (2) its property must be actually and exclusively used for the tax-exempt purpose;* [11] and (3) its operating and use of its property must not be conducted for profit.” Hunterdon Medical Ctr., supra, 195 N.J. at 562, 951 A.2d 931 *176 (quoting Paper Mill Playhouse v. Township of Millburn, 95 N.J. 503, 506, 472 A.2d 517 (1984)).

a. The moral and mental improvement classification

When making a determination of whether or not an entity is organized exclusively for an exempt purpose, the courts look only to the entity’s organizational documents, which include the by-laws as well as the Articles of Incorporation. Black United Fund v. City of East Orange, 17 N.J.Tax 446, 455 (Tax 1998), aff'd 339 N.J.Super. 462, 772 A.2d 65 (App.Div.2001); See Planned Parenthood of Bergen County, Inc. v. City of Hackensack, 12 N.J.Tax 598, 610 n. 6 (Tax 1992), aff'd, 14 N.J.Tax 171 (App.Div. 1993) (holding “that the term ‘organized’ in the statute refers to the entity’s organizational documents, its corporate charter).” See also Intercare Health Sys., Inc. v. Township of Cedar Grove, 12 N.J.Tax 273, 275 (App.Div.1991), certif. denied 127 N.J. 558, 606 A.2d 369 (1992).
There is no legislative delineation of the moral and mental improvement classification in the statute or its legislative history to serve as a definitive guide. Paper Mill Playhouse, supra, 95 N.J. at 512-513, 472 A.2d 517. The moral and mental improvement classification has been applied to various public and civic organizations, which directly serve the public by contributing to the educational, cultural and spiritual development in society in general. Church Contribution Trust v. Borough of Mendham, 9 N.J.Tax 299, 308 (Tax 1987).
In City of Elizabeth v. Bayway Cmty. Ctr., 19 N.J. Misc. 263, 18 A.2d 558 (Tax 1941), a community center was found by the court to be an entity organized for the moral and mental improvement of men, women and children based on its contributions to the community. The court found that:
[Respondent is an incorporated organization formed for purposes of charity, and the moral and mental improvement of adults and children residing in what is known as the Bayway section of the City of Elizabeth. The proof shows abundant fulfillment of those purposes, in a literal sense. The buildings and land under appeal ... are exclusively used to house a veritable multitude of activities, too numerous to recount here in detail, charitable, social and educational in nature, for *177 the benefit of thousands of working class families in the neighborhood of the property, at little or no cost whatever to such persons.

[Ibid.]

The moral and mental improvement exemption has been applied to not-for-profit organizations, which directly serve the general public by promoting, making available and distributing scholarly and scientific materials and information to the general public. In Town of Bloomfield, v. Acad. of Med., 47 N.J. 358, 221 A.2d 15 (1966), the Court held that a professional organization of physicians and dentists which operated a medical library open to the public and sponsored symposia on medical issues usually attended by the general public, was organized for the moral and mental improvement of men, women and children.
In Princeton Univ. Press, supra, the Court held that a not-for-profit printing and publishing plant affiliated with Princeton University, which published outstanding scholarly works, was organized for the moral and mental improvement of men, women and children. Its publication of these works, which would normally not earn a sufficient return to merit publication by commercial publishers, was deemed by the court to be “a valuable public service”. 35 N.J. at 216, 172 A.2d 420. The press was denied exemption, however, because the balance of its activities, commercial printing performed to offset losses incurred in publishing the scholarly works, was found to be non-tax-exempt use of the property.
In Paper Mill Playhouse, supra, the Court applied the moral and mental improvement exemption to a not-for-profit corporation that operated a theater and produced live theatrical and cultural productions. The Court stated:
[DJespite our uncertainty about the classification boundaries, we have no doubt that Paper Mill’s stated purpose, ia, to promote “a greater interest in and appreciation of art, music, drama, history, literature, education and theater ... by the presentation of concerts, drama, ballet and musical performances” is for the moral and mental improvement of men, women and children.
[95 N.J. at 514, 472 A.2d 517.]
Other theater groups had been found exempt under the moral and mental improvement exemption in Chester Theatre Group v. Borough of Chester, 115 N.J.Super. 360, 363, 279 A.2d 878 (App. *178 Div.1971), and City of New Brunswick v. George St. Playhouse, Inc. 2 N.J.Tax 407 (Tax 1981). These cases involved community groups which used theaters exclusively to present musical and dramatic productions, concerts, workshops and children’s programs.
Based upon PRO’S By-Laws and Articles of Incorporation and applicable case law, the court is satisfied that PRO’S primary mission is “to promote public interest in the arts and in culture with an emphasis on education,” and is therefore “organized exclusively for the moral and mental improvement of men, women and children” within the intent and meaning of N.J.S.A. 54:4-3.6. Based on this conclusion it is not necessary for the court to further determine whether PRO is also organized for a charitable purpose.
The question now turns to whether the Subject Property is actually used for the moral and mental improvement of men, women and children. In this critical regard to its claim of tax exemption, PRO falls substantially short of the mark.

b. The use of the Arts Center

The Supreme Court of New Jersey has held that “[t]he use-for-an-exempt-purpose [prong] is superfluous when property is otherwise ineligible because a for-profit activity is conducted on it or because the property itself is not owned by an entity eligible for tax exemption under N.J.S.A 54:4-3.6.” Hunterdon Med. Ctr., supra, 195 N.J. at 566 n. 13, 951 A.2d 931. The test for whether property is used for profit is a “pragmatic inquiry into profitability____[A] realistic common sense analysis of the actual operation of the taxpayer; mechanical centering on income and expense figures is to be avoided.” Paper Mill Playhouse, supra, 95 N.J. at 521, 472 A.2d 517. While N.J.S.A 54:4-3.6 requires that the operation and use of property not be conducted for profit, “[t]here is nothing in the statute requiring, as a condition of tax exemption, that a [Arts Center] must actually operate at a loss----” Id. at 522, 472 A.2d 517 (quoting City of Trenton v. N.J. Div. of Tax App., 65 N.J.Super. 1, 10, 166 A.2d 777 (App.Div.1960)). “A *179 crucial factor is where the profit goes____ ‘[I]f [the court] can trace it into someone’s personal pocket the [entity] is not entitled to tax exemption.’ ” Ibid, (quoting Trenton, supra, 65 N.J.Super. at 12, 166 A.2d 777).
In considering whether the Subject Property is used for profit, one case in particular sheds light on the determination. In City of Long Branch v. Monmouth Med. Ctr., 138 N.J.Super. 524, 526, 351 A.2d 756 (App.Div.1976), the Appellate Division was asked to determine the tax exempt status of several buildings owned by the Monmouth Medical Center (hereinafter the “Center”). One building, the Steinan Housman Wing, was used in the following manner:
The remaining half of the building is occupied and used as private physicians’ offices. The physicians occupying these offices use them for the conduct of their private professional practices as well as for the performance of certain hospital staff functions. The Center charges these physicians a rental rate less than that charges for comparable office space in the area, and the financial records reveal that this building is also operated by the Center at a loss. The physicians renting these offices, with one exception, are in some way affiliated with the Center either as employee-physicians or appointed-physicians without financial remuneration.
[Id. at 528, 351 A.2d 756.]
Another building, the Professional and Educational Building, was in part:
[R]ented to physicians and one dentist for offices for the private practice of medicine and dentistry. Of the physicians and dentist renting these offices, only three hold medical administration posts on the staff or are involved in the operation of the hospital. The other physicians and the dentist apparently have privileges at the hospital and render some clinic service without charge and are available for some emergency duty.
[Id. at 528-29, 351 A.2d 756.]
The Appellate Division found that:
]t]he evidence demonstrates beyond any question that these buildings were not “actually and exclusively used” for hospital purposes. The Center rented portions of these buildings to physicians and one dentist for offices wherein they conducted their private professional practices. The physicians and dentist treated their private patients in these offices and presumably derived pecuniary profit therefrom. The fact that the Center may have rented these offices at a rate less than the prevailing rate for comparable offices in the area and did not operate these buildings at a profit does not change the fundamental commercial nature of the use of these buildings. The utilization of these buildings for the private practice of medicine and dentistny is purely and simply a pivate profit-making activity and is in direct competition with the privately owned commercial rental buildings and goes far beyond the traditional functions and pmposes of a hospital.
*180 [Id. at 535, 351 A2d 756 (emphasis added).] [12]
Although City of Long Branch concerned the tax exempt status of several buildings owned by a Hospital in which office space was rented to physicians in private practice for profit, and not an Arts Center as in the present matter, this court nevertheless finds the opinion to be particularly instructive in deciding this appeal. Similar to the facts in City of Long Branch, the art studio, ballroom and classroom space in the Subject Property were essentially utilized by artists, dance and theatrical performers, and instructors for the purposes of creating works of art or conducting classes for profit,[13] The artists, performers, or instructors were not employees of the Arts Center; they did not receive any compensation from the Arts Center.
As of December 2004, the Arts Center created an “artist in residence” program which includes in-house studio space[14] for the artist. Since December 2009, PRO began collecting fifty dollars per month in studio fees that directly paid for their bills (heating/gas, electric, phone, water and sewer).[15] The artists were permitted to display their works of art in the Arts Center for sale to the general public. PRO had an informal arrangement with the resident artists to provide PRO with a percentage or “donation” from the sale of any artists’ work sold in the Arts Center. The *181 artists kept the remaining proceeds received from the sale of their art work.
In addition, during the summer of 2009, several Art Expos were held at the Art Center at which a three dollar to four dollar cover charge was paid by those attending. The cover charge collected went directly to the cost of the Arts Center’s maintenance and utility bills. The Art Expos featured a particular artist’s work and was on display for sale to the public. PRO had an informal arrangement with featured artists to receive a percentage of any artwork sold to the public. The percentage received by PRO for art work sold at Art Expos varied by artist but was usually around fifteen percent.
The Arts Center also offered classes taught by outside instructors in the basic visual arts curriculum including fundamental drawing, watercolor, pen and ink, painting with oil and acrylics, design and art history of the twentieth century, music theory and glass blowing. The instructors, however, where not providing instructions free of charge; rather, they charged a fee to those attending the classes. Furthermore, similar to the informal arrangement with the artists in residence, PRO had an informal arrangement with the instructors to receive fifty percent of the fees collected for the classes.
There have also been various dance and theater classes offered at the Arts Center’s approximately 1,600 square feet dance studio. In particular, the Lehigh Valley Cloggers paid $1,500 to utilize dance studio space in order to practice and for event performances. The Xoehiquetzal Group Mexicano Folklórico dance group also utilized the dance studio space at the Arts Center. That dance group practiced two and three times a week and did not pay any rent. However, in late 2009 and early 2010 the group contributed money for utility bills.
Accordingly, the facts here, like the facts in the City of Long Branch, give rise to the presumption that the artists, dancers and instructors derived pecuniary profit from their use of their respective art gallery spaces, studio dance areas and class rooms. While City of Long Branch involved several buildings owned by a *182 Hospital in which office space was rented to private physicians, the paying of rent for use of space does not distinguish the instant matter which turns primarily upon the use of the Subject Property by for-profit artists, dancers and instructors. The Arts Center’s activities at the Subject Property support the profitable activities of separate for-profit entities. PRO failed to put forth any evidence that any of the artists, dancers and instructors operated as not-for-profit entities. To the contrary, it is clear from the testimony that their services and activities were not gratis; works of art were created and sold, and classes were taught for-profit.

c. The use of the Environmental Resource Center

A different conclusion, however, is warranted with regard to the office space of the Subject Property utilized by PRO as an Environmental Resource Center. The Environmental Resource Center was derived from the objective stated in Article II, Section E(8) of PRO’s By-Laws “to create a Land trust for the preservation of farmland, forest and open space,” and from PRO’s mission is to discourage inappropriate land use and protect natural resources through preservation. See Article II, Section E(2), (3) and (8) of PRO’s By-Laws. Unlike the activities of the Art Center at the Subject Property, the Environmental Resource Center is staffed entirely by PRO members. The approximately 100 square foot office space is utilized exclusively by the Environmental Resource Center in furtherance of its aforementioned mission.
Through March 31, 2010, PRO successfully obtained Green Acres Program[16] approval for projects and worked in conjunction with the State of New Jersey, land owners and other contributors in order to purchase and preserve hundreds of environmentally significant acres. This approval was cancelled, however, in a letter dated August 1, 2011 to PRO, stating that the reason for *183 cancellation was due to PRO was “not incompliance with the statute and regulations that govern not-for-profit organizations.”
In order to secure a tax exemption the Environmental Center portion of the Subject Property under N.J.S.A. 54:4-3.6, the same test delineated in Paper Mill Playhouse v. Millburn Twp., supra, must be applied.
The court previously concluded hereinabove that PRO was “organized exclusively for the moral and mental improvement of men, women and children” within the intent and meaning of N.J.S.A. 54:4-3.6. That conclusion is bolstered by the Environmental Center’s mission to discourage inappropriate land use and protect natural resources through preservation. See Article II, Section E(2), (3) and (8) of PRO’S By-Laws.
The Environmental Center’s office space, however, must also be “actually used” for the moral and mental improvement of men, women and children. See N.J.S.A. 54:4-3.6. Here, the principal activity of the Environmental Center is protecting natural resources through preservation. The court finds that the office space utilized by the Environmental Center furthers its stated mission; it is available only to members of the Environmental Center to carry on the Environmental Center’s daily affairs. Unlike in City of Long Branch, supra, where the Appellate Division concluded the doctors’ and dentists’ offices were used for the private practice of medicine, the office space here is used for the purpose of protecting natural resources through preservation and not for private use. Accordingly, the court finds that the Environmental Center’s office space is actually used for the tax-exempt purpose.
Lastly, there is no evidence that the Environmental Center uses or operates the office space at the Subject Property for profit. Rather, the court finds that the Environmental Center’s use and operation of the office space is consistent with its stated mission. Furthermore, the Environmental Center provides an important public service through its activities conducted at the Subject Property which promote “the moral and mental improvement of men, women and children.” The court finds that the Environmen *184 tal Center’s office space at the Subject Property is not used or operated for profit.
Accordingly, the office space utilized by the Environmental Center qualifies for property tax exemption pursuant to N.J.S.A 54:4-3.6.

Conclusion

PRO had the burden to prove under the test established in Paper Mill Playhouse that the Subject property qualified for a property tax exemption within the intent and meaning of N.J.S.A. 54:4-3.6. Applying that test, PRO failed to demonstrate that the use and operation of the Subject Property was not conducted for profit. To the contrary, the evidence was clear that the artist studio space, art gallery space, dance studio space and classroom space (i.e. virtually the entire Arts Center), were in fact used for profit during the tax year at issue. Only the 100 square foot office space utilized by the Environmental Resource Center satisfied all three parts of the three-prong test set forth in Paper Mill Playhouse and therefore is the only portion of the Subject Property that qualifies for a property tax exemption. The Assessor is directed to recalculate the assessment of the Subject Property for tax year 2010, and make the necessary adjustment to the improvement to account for the partial exemption of the 100 square foot office space utilized by the Environmental Center.[17] The Tax Court Clerk/Administrator shall enter judgment consistent with this opinion.

 PRO’s qualification under I.R.C. Section 501(c)(3) is not, in and of itself, sufficient to qualify for a property tax exemption under N.J.S.A. 54:4-3.6. See Black United Fund v. City of East Orange, 17 N.J.Tax 446 (Tax 1998).

 A police officer in Phillipsburg offered free services as a karate instructor to children at risk and their families on Thursday nights and Saturday mornings from October 2005 to October 2009. The police officer did not contribute any money to the Arts Center.

 Donations were accepted for refreshments.

 N.J.S.A. 54:4-4.4 requires that once an organization is granted tax exempt status as required under the initial statement filed with the Tax Assessor a further statement must be completed every third year to determine whether there has been any substantial changes that can effect the tax-exempt status for property tax purposes.

 Land: $60,800; Improvement: $283,800; Total: $344,600.

 The property tax appeal filing date was extended to May 1, 2010 due to Phillipsburg’s revaluation.

 Mr. Rogers’ letter was admitted in evidence without objection. In it, he indicated that he represented PRO and was "also a trustee and current chairman *173 of PRO.” At trial, Phillipsburg did not challenge PRO’s standing to proceed with the matter.

 R. 1:21-1 (c) states that a business entity "shall neither appear nor file any paper in any court of this State except through an attorney authorized to practice in this State.” (emphasis added). This court observes that County Boards of Taxation are quasi-judicial bodies but not courts within the intent and meaning of R. 1:21—1 (c). Vicari v. Township of Bethlehem, 8 N.J.Tax 513, 518 (Tax 1986) (citing N.J.S.A. 54:3-1 to-31).

 Phillipsburg's counsel moved before the Board to dismiss PRO’s appeal on the basis that the appeal had not been filed by a lawyer. This, however, was not the basis cited by the Board's in dismissing the matter. The Board never determined whether PRO could appear pro se or whether R. 1:21-1 (c) was applicable to proceedings before County Boards of Taxation. See arguendo Stack v. P.G. Garage, Inc., 7 N.J. 118, 121, 80 A.2d 545 (1951) (finding that "the jurisdiction of the county tax board is quasi-judicial in nature and that the prosecution of an appeal before it constitutes the practice of law ... [and] ... require the services of a lawyer____").

 Int’l Sch. Serv., Inc., supra, was brought to the Court's attention by Phiilipsburg's counsel. The decision in that case was rendered by our Supreme Court subsequent to the trial in the present matter but prior to the court's decision herein. The court permitted and received comment from PRO’s counsel concerning the same in which he objected to this court's consideration of Int’l Sch. Sew., Inc. The court is satisfied that R. 2:6-11 allows the higher court's holding in International Schools to be considered for purposes of this opinión.

 The test as enunciated in Paper Mill Playhouse has been altered by legislative action subsequent to that decision. Legislative amendment to N.J.S.A. 54:4-3.6 has eliminated the second prong's exclusivity requirement. See L.1985, c. 395. The statute presently permits exemption for property that is "actually used” in connection with tax-exempt functions, instead of imposing the exemption's requirements on "all buildings actually and exclusively used in the work of associations and corporations organized exclusively for the moral and mental improvement of men, women and children[.]” Compare L.1985, c. 395, with L.1983, c. 224.

 City of Long Branch was decided before the Legislature amended the statute in 1983 to exclude the requirement that the property be used "exclusively" for hospital purposes.

 The activities of the Girls Scout troops and the police sponsored karate classes noted earlier in this opinion, appear to be the only activities conducted at the Art Center in the year preceding October 1, 2009 that were not conduced for profit. Those activities, however, were of a limited duration and appear to have ended by October 1, 2009.

 Approximately twenty five percent of the 5,500 square foot Arts Center was used by the artists in residence.

 At trial, Mr. Regrut indicated that although there was no formal rent or lease agreement between the artists in residence and PRO, it was understood by the artists that they had to pay in order to utilize the art studio space.

 The Green Acres, Farmland, Blue Acres and Historic Preservation Bond Act of 2007 authorized $ 12 million for acquisition of lands in the floodways of the Delaware River, Passaic River or Raritan River and their respective tributaries, for recreation and conservation purposes.

 The exemption shall be applied to the improvement since N.J.S.A. 54:4-3.6 provides that "if any portion of a building used for [for the moral and mental improvement of men, women and children] is leased to profit-making organizations or is otherwise used for purposes which are not themselves exempt from taxation, that portion [of the building] shall be subject to taxation and the remaining portion only shall be exempt.” Ibid. The exemption shall not be applied in part to the land since N.J.S.A. 54:4-3.6 requires that the land be "devoted to the purposes above mentioned and to no other purpose." Ibid. (emphasis added).