The opinion of the court was delivered by
AXELRAD, P.J.A.D.
In this local property appeal, we consider whether the taxpayer, a not-for-profit corporation organized under the laws of New Jersey and granted § 501(c)(3) non-profit charitable status, that operates a community arts center, satisfied the third prong for an exemption under N.J.S.A. 54:4-3.6, i.e., that the operation and use of the property is not conducted for profit. The Tax Court found plaintiff did not carry its burden of proof, and we affirm.
I.
Plaintiff Phillipsburg Riverview Organization, Inc. challenged the property tax assessment for the 2010 tax year on its property located at 68 Main Street in Phillipsburg, identified as Block 917, Lot 4.[1] Situated on the property is a 5500 square foot building *190 known as The Riverview Arts Center, which plaintiff purchased in January 1992. The building includes a classroom and gallery-shop space, an artist-in-residence studio and office, and a sculpture, glass, and ceramic area. A large ballroom is located on the second floor and is used for dance and theater workshops or larger art classes.[2] Plaintiff contended the subject property was statutorily exempt as an arts center open to the public, utilized to support and promote performing and visual arts by providing affordable studio space and creating community-based arts programs. Following the denial of tax exemption, plaintiff appealed to the county tax board, which dismissed the appeal with prejudice for reasons unrelated to this appeal. Plaintiff then appealed to the Tax Court.[3]
At trial, plaintiff presented the testimony of Michael King, former Chairperson; Mark Harlos, Treasurer; Thomas “Reggie” Regrut, Chairperson and former Treasurer; and Barry Glassman, Vice Chairperson. The municipality presented no witnesses. In a published opinion, Judge Vito Bianco concluded that plaintiff had failed to satisfy the third prong of the three-prong test for exemption articulated in Paper Mill Playhouse v. Millburn Township, 95 N.J. 503, 506, 472 A.2d 517 (1984), i.e., that the operation and use of the property was not conducted for profit, and entered judgment denying the exemption. Phillipsburg Riverview Org., Inc. v. Town of Phillipsburg, 26 N.J.Tax 167 (Tax 2011). This appeal ensued.
On appeal, plaintiff contends it established it qualified for tax exemption, because “[t]he only pocket that matters in tax exemption cases is what becomes of the organization’s funds[,]” the judge’s finding regarding the dance group is unsupported by the record and erroneous, and the town’s conduct “did not comport with the Square Corners Doctrine.”
*191 II.
The following testimony and evidence was adduced at trial conducted in October and November of 2011. King testified that around the assessment date the building was being used by a Mexican folklorie dance group, the Lehigh Valley Cloggers, and for a karate program. The Cloggers used the studio primarily for rehearsals but also used it for open houses to put on demonstrations. The dance group and karate program were not charged rent but the Cloggers were charged an annual fee of $1200. Three well-advertised gala receptions were also hosted on separate nights in 2009, during which artists showcased their work, with accompanying music and entertainment, for which there was an admission fee. King acknowledged that the purpose of the show was to “sell art.” Plaintiff received a portion of the sales proceeds, but there was no set rule on how much of a commission it received. Moreover, plaintiff permitted other artists to display their work for sale in the building for one week at a time. Plaintiff would advertise for them and receive a fifteen percent commission on each sale.
The building also hosted artists in residence who were provided private workspace at a charge of $50 per month, and were permitted to sell their work and retain the entire proceeds. King acknowledged that some of the artists supported themselves by these sales. King testified that the money plaintiff collected from art sales and studio fees went directly to the building’s maintenance and utility costs.
The building was also used for monthly poetry readings and the teaching of various visual art classes. Regrut testified that plaintiff had an arrangement with the teachers that they could set the fee for their class, and fifty percent of that fee was paid to plaintiff. In exchange, plaintiff provided the space and promoted the classes. Regrut likened the teachers to consultants. With the exception of the classes he taught, Regrut could not recall any other teacher providing classes for free.
Harlos testified as to the accuracy of the January 1, 2008 through April 30, 2010 financial statement that was admitted into *192 evidence. The statement reflected 2009 income of $1200 from the Cloggers and $3222.84 from programs, as well as expenses of $4865.13 for utilities, $908.50 for maintenance, and $320.57 for programs.
Based on the aforementioned testimony and evidence, Judge Bianco concluded that plaintiff fell “substantially short of the mark” regarding the third prong because “the art studio, ballroom and classroom space in the Subject Property were essentially utilized by artists, dance and theatrical performers, and instructors for the purposes of creating works of art or conducting classes for profit.”[4] Phillipsburg Riverview Org., supra, 26 N.J.Tax at 180 (footnote omitted). He found the activities at the building supported “the profitable activities of separate for-profit entities.” Id. at 182. He explained that plaintiff “failed to put forth any evidence that any of the artists, dancers and instructors operated as not-for-profit entities” and the testimony clearly demonstrated “that their services and activities were not gratis; works of art were created and sold, and classes were taught for-profit.” Ibid.
Plaintiff does not dispute that the building was essentially used by artists, dancers, theatrical performers, and teachers to create works of art or conduct classes for profit. It challenges the ruling, however, arguing the court relied on inapposite cases; improperly found the third prong was not met “because artists realized a profit from the operation of that space” and “ignor[ed] the reality that some pursue art solely as an avocation while others are merely trying to make a living or defray their expenses”; misapplied the law and facts because its sole focus should have been on how the corporation uses the funds; and concluded without a factual basis that the Cloggers derived a pecuniary profit from their use of the dance studio. Plaintiff also *193 urges that there is ample evidence the municipality did not treat them fairly. We are not persuaded by these arguments and affirm Judge Bianco’s determination of ineligibility on the third prong substantially for the reasons articulated in his comprehensive published opinion.
III.
Statutes granting exemptions are to be strictly construed against the claimant to the extent consistent with legislative intent, and the entity claiming exemption has the burden of establishing its entitlement to the exemption. Int’l Schs. Servs., Inc. v. West Windsor Twp., 207 N.J. 3, 15, 21 A.3d 1166 (2011); Princeton Univ. Press v. Borough of Pnnceton, 35 N.J. 209, 214, 172 A.2d 420 (1961). This principle “promote[s] the goal of uniformity in taxation and eliminate[s] the harm that comes from unauthorized exemptions from local property taxation [which] can unduly burden particular communities.” Int’l Schs. Servs., supra, 207 N.J. at 15, 21 A.3d 1166 (internal quotation marks and citation omitted).
N.J.S.A. 54:4-3.6 requires, in pertinent part as to the third prong, that the properties for which exemption is claimed:
are not conducted for profit, except that the exemption of the buildings and lands used for charitable, benevolent or religious purposes shall extend to cases where the charitable, benevolent or religious work therein carried on is supported partly by fees and charges received from or on behalf of beneficiaries using or occupying the buildings; provided the building is wholly controlled by and the entire income therefrom is used for said charitable, benevolent or religious purposes!.]
The analysis of the third prong requires “a pragmatic inquiry into profitability.” Paper Mill, supra, 95 N.J. at 521, 472 A.2d 517. Moreover, case law requires “a realistic common sense analysis of the actual operation of the taxpayer; mechanical centering on income and expense figures is to be avoided.” Ibid.
In Paper Mill, the Supreme Court held that a non-profit community theater met the three statutory prongs for a tax exemption. Id. at 506, 472 A.2d 517. The Court explained that an organization does not need “to lose money or at least do no better than break even” in order to retain its tax exemption. Id. at 523, *194 472 A.2d 517. The Court was satisfied that the theater was not operating for profit as any surplus was “reinvested in theatrical productions, maintenance of the theater, or necessary capital improvements, including expansion” and none of the surplus “can be traced into someone’s pocket.” Id. at 522-23, 472 A.2d 517.
Contrary to plaintiffs assertion, its officers did not refute that the artists made profits from sales of their work. King acknowledged that the artists sell their work for a profit. The trial record undisputedly disclosed that the artists in residence derived income from the sale of their work and some even supported themselves in that manner. Moreover, during the assessment period, plaintiff hosted three art receptions where artists sold their work for profit and gave plaintiff back a percentage for which there was “no set rule.” Different artists would also sell their work on a weekly basis and set their own prices. Plaintiff would advertise for them and receive a fifteen percent commission based on a “gentleman’s agreement.” Additionally, Regrut testified that the art teachers would receive fifty percent of the tuition they set, and it was his belief they were teaching for the money as opposed to doing it altruistically.
It is of no moment that the commissions and fees received by plaintiff went towards the maintenance and utility costs of the building since the artists and teachers derived pecuniary profits from their use of the facilities. In contrast with Paper Mill where all of the theater’s profits, including the refreshment concession and small arts gallery in its upper lobby, were reinvested in productions, maintenance, or necessary capital, and no money could be traced to personal pockets, id. at 521, 472 A.2d 517, monies derived from the use of the arts center were used not only for utilities and maintenance of the building but as income for artists and teachers.
While the teachers were arguably promoting art in their classes, they acted no differently than a commercial art class in that they had full authority to set tuition at whatever figure they desired. The artists also established the price for their paintings, and the gala, weekly shows, and private woi’kspace for the artists in *195 residence was clearly geared towards assisting them in selling their wares. Presumably, the Cloggers also derived a pecuniary profit from their use of the studios for open-house demonstrations. The burden is on plaintiff to prove it qualifies for a tax exemption, and as noted by Judge Bianco, plaintiff failed to prove that the various dancers, artists, and teachers did not use the facility to earn a profit.
The judge had ample basis in the record to conclude that plaintiff operated and maintained the subject property for the purpose of making a profit, as that requirement has been construed in the case law. We do not address plaintiffs final argument of alleged unfair treatment by the municipality as it is irrelevant to the issue of statutory eligibility and does not warrant further discussion. R. 2:11-3(e)(1)(E).
Affirmed.

 Plaintiff was not granted an exemption for 2011, but did not appeal so the Tax Court did not have jurisdiction over that year.

 The Tax Court granted a partial exemption for office space in the basement used by plaintiff’s Environmental Resource Center, which is not under appeal.

 The municipality removed plaintiff's tax-exempt status for 2010 due to untimeliness of submissions; however, the Tax Court properly addressed the merits of plaintiff’s qualification for a tax exemption.

 Judge Bianco found plaintiff was organized exclusively for its exempt purpose and thus satisfied the first prong of N.J.S.A. 54:4-3.6. Based on his finding of disqualification under the third prong, he did not address the second prong, i.e., that the property was "actually and exclusively used for the tax-exempt purpose." Ibid.