TOWN OF BLOOMFIELD, A MUNICIPAL CORPORATION. PETITIONER-RESPONDENT, v. THE ACADEMY OF MEDICINE OF NEW JERSEY, RESPONDENT-APPELLANT.

Argued May 9, 1966—Decided June 27, 1966.

See also 46 *N. J.* 56, 214 *A. 2d* 707.

*Mr. John R. Weigel* argued the cause for appellant (*Messrs. Steelman, Lafferty, Rowe & McMahon,* attorneys; *Mr. James L. R. Lafferty,* of counsel; *Mr. Weigel,* on the brief).

*Mr. Joseph D. Lintott* argued the cause for respondent.

PER CURIAM. We granted certification on appellant's petition (46 *N. J.* 56 (1965)) from so much of the judgment of the Appellate Division (87 *N. J. Super.* 420 (1965)) as affirms the judgment of the State Division of Tax Appeals which held taxable appellant's property known as Block 517, Lot 23, 317 Belleville Avenue, Bloomfield, New Jersey. The sole question is whether appellant's property meets the test within the meaning of *N. J. S. A.* 54:4-3.6 holding as tax-exempt, property which is "actually and exclusively used in the work of associations and corporations organized exclusively for the moral and mental improvement of men, women and children * * *." Appellant has specifically abandoned before us the argument that its property is tax-exempt by virtue of its use for "colleges, schools, academies and seminaries," as provided for in the same section.

For the 1960 year respondent levied an assessment of $17,200 on this property—$9,200 on land and $8,000 on improvements which consisted of a building containing executive offices of The Academy of Medicine, meeting rooms, rooms with historical material of The Academy and of medi-

cine in New Jersey, and a barn-type structure in the rear used solely for storage purposes.

The Academy appealed to the Essex County Board of Taxation on the ground that all its properties were exempt from taxation under *N. J. S. A.* 54:4–3.6. A hearing was held and the Essex County Board of Taxation cancelled said assessments. Bloomfield then appealed to the Division of Tax Appeals which reversed the judgments of the county board and reinstated the assessments on both properties.

The Academy then appealed to the Appellate Division which affirmed the judgment of the Division of Tax Appeals relating to 317 Belleville Avenue. At the same time, the Appellate Division remanded to the Division of Tax Appeals that portion of the appeal concerning the exempt status of the Library (307 Belleville Avenue) itself for the purpose of allowing the parties to present evidence as to whether the library is exempt as "actually and exclusively used as a public library" under *N. J. S. A.* 54:4–3.6. As will appear from the discussion upon the exempt status of the executive office building we find that the remand is unnecessary by virtue of our holding the 317 Belleville Avenue building to be tax-exempt.

Concededly, appellant was organized under the name "The Academy of Medicine of Northern New Jersey" by a group of physicians and dentists as a nonprofit association, pursuant to *L.* 1898, *c.* 181, *p.* 422, "An Act to incorporate associations not for pecuniary profit," as amended (which law is the source of *N. J. S. A.* 15:1–1, *et seq.*), and *L.* 1907, *c.* 247, *p.* 587, "An Act to provide for the incorporation of pathological and anatomical associations for the advancement of medical and surgical science," as amended, which is the source of *N. J. S. A.* 45:9–43 *et seq.* At the time of The Academy's founding in 1911 New Jersey lacked a medical or dental school and had few resources for post-graduate medical or dental education. The name of appellant was changed to "The Academy of Medicine of New Jersey" on March 10, 1953. The Academy was located in Newark from the time

of its founding until April 1959, when it moved to Bloomfield.

The objects of the appellant are stated in its Certificate of Incorporation as follows:

"The purposes for which the Association shall be formed are pathological and anatomical study and investigation, and the advancement and promotion of medical and surgical science, by such means as to them shall appear expedient and proper, and also maintenance of a public medical library."

Appellant has a membership of over 1,800 physicians and dentists. It maintains the medical library of over 30,000 volumes, which is the largest medical library in New Jersey. The library is open to the public and is used by elementary and high school students, medical and dental students, lawyers and non-member doctors and dentists as well as members of the Academy.

The building at 317 Belleville Avenue contains the executive offices of The Academy, meeting rooms and rooms containing historical material of The Academy and of medicine in New Jersey. The meeting rooms are also used by an experimental group which is not associated with the Academy. The president of the Academy illustratively cited additional groups such as medical technologists, hospital laboratory technicians, the diabetics association and "any groups that are interested in science or medical problems." The building also serves as the administrative center for the educational courses which are conducted at hospitals in various parts of New Jersey. These educational courses consist of series of lectures and discussions conducted for local physicians and dentists thus enabling the doctors to obtain current medical information without leaving the local area.

The Academy also conducts symposia open to the public on subjects of broad general interest such as poliomyelitis, the use of the artificial kidney, congenital abnormalities, automobile injuries, emergency ambulance service, fluoridation and alcoholism. As an example, several years ago the

Academy sponsored a symposium on the advantages and necessity of oral polio vaccine, the principal speakers including Dr. Albert Bruce Sabin and Dr. Herald Rea Cox. This particular symposium was attended largely by members of the general public. Because of the number of people who attend these symposia, they are usually conducted away from The Academy's properties in Bloomfield but are directed from the 317 Belleville Avenue property. The Academy publishes a Bulletin which provides current information on the various areas of medicine and also reports the results of the various symposia sponsored by The Academy. The Bulletin is distributed throughout the world.

 The fundamental approach of our statutes is that ordinarily all property shall bear its just and equal share of the public burden of taxation. As the existence of government is a necessity, taxes are demanded and received in order for government to function 51 *Am. Jur. Taxation*, § 9, *p.* 42. Statutes granting exemption from taxation represent a departure and consequently they are most strongly construed against those claiming exemption. The burden of proving a tax-exempt status is upon the claimant. *Pingry Corp v. Hillside Tp.*, 46 *N. J.* 457, 461 (1966).

 Respondent contends that the disposition of the case is controlled by *Princeton Univ. Press v. Borough of Princeton*, 35 *N. J.* 209 (1961), and *Textile Research Institute v. Princeton Township*, 35 *N. J.* 218 (1961). In *Princeton Univ. Press* we construed the "moral and mental improvement" clause of the statute to require a claimant of a tax exemption to meet a dual test:

"Under the statute, exemption from taxation is tested by exclusiveness *both of purpose* of the organization and *of the use* of the property for the moral and mental improvement of men, women and children. * * *" (35 *N. J.*, at *p.* 214, emphasis added.)

A proper application of the "exclusive use" test necessarily depends upon the facts of each case. For example, although we recognized that the Princeton University Press had been

364

and is organized exclusively for the mental and moral improvement of men, women and children, we denied a tax exemption:

"\* \* \* It cannot be likewise concluded, however, that the property is exclusively used for the mental and moral improvement of men, women and children as required by the statute. A substantial portion of the Press's activity consists of printing work taken in for the purpose of offsetting the losses incurred in the publication of scholarly books. Such printing, which includes work done for educational and non-profit organizations other than Princeton University, is undertaken for the purpose of making a profit. Hence, in this sense the printing takes on the nature of a commercial enterprise and, therefore, it cannot be said that the property is exclusively used for the statutory purpose." (35 N. J., at p. 216, emphasis added.)

The profit motive also led us to deny a tax exemption in *Textile Research Institute,* where the organization was controlled by a particular *profit-making* segment of industry, whose purpose was principally and primarily to engage in research and development of means of producing benefits to the textile industry in terms of decreased costs, more efficient operation and more desirable products.

Respondent would analogize the textile industry to the medical profession and contends that an organization which is intended to benefit itself and is controlled by one professional group or industry cannot be said to directly benefit the "moral and mental improvement of men, women and children."

In *Textile Research Institute* the company members had the exclusive privilege to consult with the Institute staff, to sponsor special projects with receipt of advanced and special information therefrom, to withhold results of such projects for a period of two years at the request of the member sponsor, to receive the advantage of "Notes on Research" not made available to non-members—all these led us to the conclusion that the Institute was primarily designed to benefit the members and therefore not entitled to an exemption.

Unlike Textile Institute and Princeton University Press the Academy is supported by dues from members, rea-

sonable charges designed to offset some of the costs of the review courses which are made available to local doctors and dentists and by convening symposia and other meetings with large attendance underwritten by various pharmaceutical and other groups. No profit is intended and the record is barren of any indication of a resulting profit even from those functions for which an admission charge is levied. All of the outside groups which use the meeting rooms at 317 Belleville Avenue and at the library are para-medical organizations and groups interested in medical science and therefore no rental or other fee is charged for the use of appellant's property. Moreover the Academy is a nonprofit, altruistic, beneficent organization contributing to the general health and welfare of the community. It does not compete with private enterprise nor does it primarily aid one segment of private enterprise.

Although specific courses and symposia may not be of interest to all doctors and dentists let alone to all members of the public and although the advanced nature of some of the educational programs admittedly makes attendance by members of the general public not feasible, appellant makes the educational benefits available to the public to the maximum degree possible. Its library is open to all who wish to use it. It is in fact used as Seton Hall University's medical library. Its symposia are open to all who wish to attend. Its instructive programs held at local hospitals throughout the State are open to all doctors who wish to attend, member and non-member. The Bulletin published by The Academy which reports current information in the various areas of medicine and also reports on the various symposia is circulated throughout the world. The room containing historical material of The Academy and of medicine in New Jersey is open to any member of the public.

Appellant concedes that if any material portion of its activity was directed toward influencing legislation for its members' pecuniary and personal advantage or securing the economic welfare of the medical or dental professions it

would not be entitled to tax exemption. The record clearly establishes that appellant has no activities in the fields of protective legislation or medical economics.

Restriction of membership in The Academy to members of the medical and dental professions and the charge of the membership fee should, likewise, not result in a denial of tax exemption. While membership in The Academy is restricted to duly licensed doctors and dentists, the educational programs and benefits are not restricted to member doctors and dentists.

We agree with appellant that it performs an important public service through its activities which promote "the moral and mental improvement of men, women and children."

We hold the property exempt.

As appears evident from the facts herein, we find that appellant's library located at 307 Belleville Avenue is an integral part of its entire operation and is itself tax-exempt as a building "actually and exclusively used in the work of associations and corporations organized exclusively for the moral and mental improvement of men, women and children," and therefore the remand as to that property is unnecessary.

Reversed—no costs in any court.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For affirmance*—None.