886 A.2d 204

INTERNATIONAL SCHOOLS SERVICES, INC., PLAINTIFF–
APPELLANT, v. WEST WINDSOR TOWNSHIP,
DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 31, 2005—Decided November 30, 2005.

Before Judges A.A. RODRÍGUEZ, ALLEY and C.S. FISHER.

*Mark D. Schorr* argued the cause for appellant (*Sterns & Weinroth,* attorneys; *Mr. Schorr,* on the brief).

*Michael J. Herbert* argued the cause for respondent (*Herbert, Van Ness, Cayci & Goodell,* attorneys; *Mr. Herbert,* on the brief).

The opinion of the court was delivered by

FISHER, J.A.D.

Since 1913, New Jersey has exempted, from local real estate taxes, property that is actually and exclusively used by non-profit organizations for the "moral and mental improvement of men, women and children." *N.J.S.A.* 54:4–3.6. To determine its applicability, the Supreme Court has held that an entity which claims such an exemption (1) must be organized exclusively for the moral and mental improvement of men, women and children, (2) must actually and exclusively use the property for that purpose, and (3) must not be operated for profit. *Paper Mill Playhouse v. Millburn Tp.,* 95 *N.J.* 503, 506, 472 *A.*2d 517 (1984).

Plaintiff International Schools Services, Inc. (ISS), founded in 1955, commenced these actions claiming exemptions for the years 2002 and 2003 on property it owns in West Windsor Township (the township). The tax judge granted the township's motion for summary judgment and denied ISS's motion for summary judgment for reasons set forth in a written decision reported at 21 *N.J.Tax* 553.

Although the tax judge briefly discussed the second prong of the *Paper Mill Playhouse* test, she nevertheless entered summary judgment in favor of the township by resting her determination on the first prong, concluding that, as a matter of law, ISS was not

organized exclusively for the moral and mental improvement of men, women and children. We disagree and reverse.

■ We initially observe that the tax judge correctly identified the three prongs of the *Paper Mill Playhouse* test. The judge also determined that whether an entity is organized exclusively for the moral and mental improvement of men, women and children "must be determined from its organizational documents." 21 *N.J.Tax* at 568–69 (citing *Black United Fund v. City of E. Orange,* 17 *N.J.Tax* 446, 455 (Tax 1998), *aff'd,* 339 *N.J.Super.* 462, 772 *A.2d* 65 (App.Div.2001); *1711 Third Avenue, Inc. v. City of Asbury Park,* 16 *N.J.Tax* 174, 182 (Tax 1996); *Planned Parenthood of Bergen Cty., Inc. v. City of Hackensack,* 12 *N.J.Tax* 598, 610 n. 6 (Tax 1992), *aff'd,* 14 *N.J.Tax* 171 (App.Div.1993)). While this approach to the first prong is generally accurate, courts are not barred from considering extrinsic information if relevant to ascertaining the meaning of the corporate documents.

ISS's certificate of incorporation states:

The purposes which the Corporation will hereafter pursue are: (1) to aid, promote and encourage, by all appropriate means, including gifts of money or other property, or by other means, schools, facilities, and other organizations that are exclusively educational in character, (2) to foster the provision of education by the payment of salaries, fellowships and grants to teachers and instructors, and (3) to devote all or a part of the income or any or all of the principal of any property, real or personal, to the furtherance and support of projects and institutions that are exclusively educational; provided, however, that no part of the net earnings of such schools, facilities, projects, institutions and other organizations inures to the benefit of private shareholders or individuals, and provided further, (a) that no substantial part of the activities of such organizations is carrying out propaganda, or otherwise attempting, to influence legislation, and (b) that such organizations do not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office.

While this statement of ISS's purpose governs whether the first prong of the *Paper Mill Playhouse* test has been met, resort to background information further illuminates its meaning and scope.

As explained in ISS's moving certification, ISS was founded in 1955 "in response to the rapid post-war growth of schools abroad which served both American children and children of the host countries." Thus, according to ISS's submission, its goal was "to

remedy the shortcomings of overseas schools in which American children were enrolled and to serve the children by enhancing the quality of their education." The intent of ISS was to further bolster this effort by fostering "the mutual understanding between the people of the United States and those of other countries by demonstrating the benefits of American-style education." Accordingly, although the certificate of incorporation's language could be parsed in a way to suggest otherwise, its stated purpose, as examined through the circumstances that caused its incorporation, suggests a general intent to promote its activities among the public in general which has, as a benefit, the "moral and mental improvement of men, women and children."

In centering on her own interpretation of the scope of the certificate of incorporation's meaning, the tax judge drew the conclusion that ISS's educational purpose did not satisfy the first prong of the *Paper Mill Playhouse* test because *"N.J.S.A.* 54:4–3.6 does not contain a general exemption for entities organized for educational purposes," and because "[t]he purpose of providing services and funds to other institutions, without more, does not qualify for an exemption under the law." 21 *N.J.Tax* at 569–70. We reject this conclusion not only because it does not comport with our prior decisions regarding the scope of *N.J.S.A.* 54:4–3.6, but also because it is inconsistent with ISS's certificate of incorporation. In applying the decisional law that has been developed by the Supreme Court and this court concerning the statute's scope and meaning, we conclude that ISS's general educational purpose is not excluded by *N.J.S.A.* 54:4–3.6. And, in examining ISS's governing documents and related extrinsic evidence in the light most favorable to ISS, we conclude that the certificate of incorporation does not preclude but arguably suggests a general public purpose in promoting its ideas.

To describe the broad scope of *N.J.S.A.* 54:4–3.6, we cannot add to or improve upon Judge Carton's analysis in *Chester Theatre Group v. Bor. of Chester,* 115 *N.J.Super.* 360, 364, 279 *A.2d* 878 (App.Div.1971) that

[t]here is no legislative delineation of the 'moral and mental improvement' classification in the exemption statute. The cluster of abstract concepts themselves suggest that, at most, only a descriptive definition is contemplated.

In that case, we determined that a theatre organization, which presented dramatic offerings and musical recitals, sought "to enrich the experience of its members and patrons and to ennoble and strengthen their character," and, accordingly, fit within the scope of the exemption, the *"general educational purpose"* of which "is fulfilled in that the public is provided with a means to appreciate these art forms." *Id.* at 365–66, 279 *A.*2d 878 (emphasis added). Not only does the particular subject of the entity whose organizational intent was considered in *Chester Theatre Group* demonstrate the broad spectrum of ideas that fall within the exemption statute, but the decision also emphasizes the presence of a "general educational purpose" within the statute's intendment. As a result, the tax judge's holding that *N.J.S.A.* 54:4–3.6 "does not contain a general exemption for entities organized for educational purposes" is mistaken.

In addition, the certificate of incorporation by no means forecloses ISS's pursuit of a general public service as required by *Town of Bloomfield v. The Academy of Medicine of N.J.,* 47 *N.J.* 358, 362, 221 *A.*2d 15 (1966). To the contrary, ISS was organized to "aid, promote and encourage" its goals by way of any "appropriate means." That could very well include, among other things, the education of the public at large about ISS's purposes and concerns. Similarly, in *Academy of Medicine,* the Court found that the property owner met the organizational prong of the test of exemption where it was organized for "pathological and anatomical study and investigation, and the advancement and promotion of medical and surgical science, by such means as to them shall appear expedient and proper, and also maintenance of a public medical library." *Ibid.* But for the phrase that referred to the maintenance of a public medical library, to which we will momentarily turn, there is no principled distinction to be drawn between the certificate of incorporation in *Academy of Medicine* and the certificate of incorporation now in question.

In analyzing the record, we conclude that the tax judge restated and described ISS's organizational purpose in a far more narrow manner than the language of the certificate of incorporation, when viewed at the summary judgment stage, permits. The tax judge described ISS's purpose as "providing services and funds to other institutions," but the certificate of incorporation also states that ISS's purpose is to "aid, promote and encourage" educational organizations "by all appropriate means," to foster the provision of education through salaries, fellowships and grants to teachers, and to support projects that are educational in nature. According to the certificate of incorporation, providing funds and services to schools are only two of the means of accomplishing ISS's central purposes, not the purposes themselves. Moreover, although the Court in *Academy of Medicine* emphasized that the entity must "perform[ ] an important public service through its activities which promote 'the moral and mental improvement of men, women and children,' " 47 *N.J.* at 366, 221 *A.*2d 15, which the Court there found, in part, in the maintenance of a medical library open to the public, ISS's certificate of incorporation by no means excludes a similar general public purpose, but rather appears to include such a purpose in its stated goal of "aiding, promoting and encouraging" educational organizations "by all appropriate means." Whether it has actually done so is an issue to be resolved through the application of the facts to the second prong of the *Paper Mill Playhouse* test—an issue that is not now before us.

Considering it is a summary judgment we are reviewing, we conclude that the certificate of incorporation should have been examined in the light most favorable to ISS, an examination which could be aided by relevant extrinsic evidence as to the organizer's intentions. Because the circumscribed interpretation of the certificate of incorporation was formulated through the tax judge's own limited view of its meaning and scope, by way of a process that mistakenly failed to resolve all doubts in favor of ISS and without resort to relevant extrinsic evidence, we reverse.

Our holding, we emphasize, is limited to a determination that the tax judge mistakenly granted summary judgment in favor of the township on the first prong of the *Paper Mill Playhouse* test. Although the tax judge's analysis of the evidence proceeded beyond the first prong, that additional discussion constitutes dictum because the summary judgment rested only upon the first prong. Accordingly, the judge's additional comments about the other prongs do not warrant our discussion or review. Indeed, we emphasize that in reversing the tax judge's decision regarding the first prong, we have not expressed and do not intimate any view of how the other prongs of that test should be applied in this matter.

We reverse the summary judgment entered in favor of the township and remand for further proceedings in conformity with this opinion. We do not retain jurisdiction.