**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0185-19T4

RIVER RATS INC.,

    Plaintiff-Appellant,

v.

BOROUGH OF FAIR HAVEN,

    Defendant-Respondent.

_____

Submitted December 7, 2020 – Decided December 23, 2020

Before Judges Fasciale and Rothstadt.

On appeal from the Tax Court of New Jersey, Docket No. 008332-2016.

DLA Piper, LLP, attorneys for appellant (Karl H. Buch and E. Giovannie Mercado, on the briefs).

Cleary Giacobbe Alfieri Jacobs, LLC, attorneys for respondent (Lani M. Lombardi, on the brief).

PER CURIAM

    Plaintiff River Rats Inc. appeals from an order dated August 14, 2019,

granting summary judgment to defendant Borough of Fair Haven (the Borough)

on the issue of property tax exemption for plaintiff's two contiguous lots. On appeal, plaintiff raises the following points for this court's consideration:

POINT I

THE TAX [JUDGE] ERRED BY DENYING PLAINTIFF'S . . . MOTION FOR SUMMARY JUDGMENT BECAUSE [PLAINTIFF] PRESENTED SUFFICIENT EVIDENCE THAT IT IS ENTITLED TO PROPERTY TAX EXEMPTION[.] (Raised Below).

A. [Plaintiff] is [E]xclusively [O]rganized for a [T]ax [E]xempt purpose[.]

i. [Plaintiff]'s constituent documents prove that it is exclusively organized as a school or college[.]

ii. [Plaintiff]'s constituent documents prove that it is exclusively organized for the moral and mental improvement of men, women, and children[.]

B. [Plaintiffs]'s [P]roperty [C]ontains [B]uildings that are [A]ctually [U]sed for a [T]ax [E]xempt [P]urpose.

i. The buildings are actually used to operate a school[.]

ii. The buildings are actually used to operate a college[.]

iii. The buildings are actually used to promote the moral and mental

2

improvement of men, women, and children[.]

C. Plaintiff is [N]ot [C]onducted for [P]rofit.

We conclude that the structures on plaintiff's property do not qualify as buildings within the exemption statute and plaintiff is not organized for, and exclusively used as, a school, nor for the moral and mental improvement of men, women, and children. We therefore affirm.

Plaintiff is a members-only sailing organization, incorporated on June 23, 1960, and first registered as an I.R.C. § 501(c)(3) not-for-profit organization on February 24, 1961. In its certificate of incorporation, plaintiff set forth its purpose under article II:

> 1. To promote, encourage and sponsor children and family group participation and interest in aquatic activities.
>
> 2. To provide training and instruction for safety in the participation of aquatic activities.
>
> 3. To acquire, hold, manage and provide facilities for participation in aquatic activities and achievement of the purpose of the association.

Plaintiff offers four categories of membership: family, life, sustaining, and honorary. Family memberships are available to families with at least one child under sixteen years old or to adults who sponsor a child and permit a family

to use plaintiff's facilities, participate in social activities, and receive a discount on its children's training program. Plaintiff limits family memberships to 125 families, of which no more than twenty-five can be non-residents of the Borough. Plaintiff's bylaws give residents preference over non-residents whenever there are more valid applications than available family memberships. Family members are afforded voting rights, can serve as trustees, and may be elected as officers to the executive board. Life memberships are available to families who were involved in plaintiff's founding or "have given long term service" to plaintiff and provides all the rights of family membership.

Sustaining memberships are available to member families, do not entail facilities privileges or voting rights, and only allow the member to participate in plaintiff's social activities. Honorary memberships are granted to those who are recognized by various public officials and entail the same rights as sustaining memberships. Neither honorary members nor sustaining members are required to pay dues. Plaintiff permits all members temporary use of its docks, summer storage for boats, mooring storage, use of its picnic tables and dock, use of its mooring field, and access—for a fee—to social and sailing events.

Plaintiff owns lots 21 and 71, which are contiguous, of block 27 in the Borough. Lot 21 is classified as a class two property (residential property, as

4

per N.J.A.C. 18:12-2.2(b)) and measures approximately 1.51 acres. Lot 71 is classified as a class one property (vacant land, as per N.J.A.C. 18:12-2.2(a)) and measures approximately 0.8 acres.

On May 21, 1966, the Fair Haven Zoning Board of Adjustment categorized plaintiff as "a community service organization not operated for profit" and conditioned various variance approvals upon plaintiff's using the premises for "family sailing and recreational activities associated therewith, including instruction for boating . . . [and] a program of competitive racing and related activities with others who are not members of" plaintiff.

Lot 21 currently contains five wood-framed structures, covered by roofs, that have hinged doors with padlocks and stand on cinderblocks or other supports. The structures are between eighteen square feet and sixty-four square feet. There exists no indication that they are equipped with windows, ventilation, utilities, or plumbing. Plaintiff uses four of the structures to store equipment, including sails, masts, and rudders, and one of them to store picnic items and other equipment for its events. It reported end-of-year values for "land and buildings" of $27,681 in 2014 and $26,031 in 2015. The Borough determined that the structures were taxable improvements for 2016.

A-0185-19T4

On May 27, 2015, plaintiff submitted an initial statement of organization claiming property tax exemption to the Borough's Tax Assessor (the assessor). In its initial statement, plaintiff claimed an exemption under N.J.S.A. 54:4-3.6. It listed its organization's purpose as "[s]ailing instruction and safe boating for children and families," and indicated that it used its five storage structures entirely in furtherance of that purpose.

On September 17, 2015, the Borough sent a letter through its counsel asking plaintiff to clarify what specific statutory exemption its use fell under, whether it previously applied for an exemption, whether it charges fees, and what activities it performed, among other matters. The Borough also requested documentation regarding any prior exemption application, tax returns and a member list, among other documents.

In its November 3, 2015 response, plaintiff specified that it sought an exemption because it uses its structures for educational purposes and for the public's moral and mental improvement.

Plaintiff stated that it sought an exemption in 2010, which the assessor denied because its property did not have any buildings. It attached letters from the Borough in which the Borough clarified that it denied the exemption because the property did not contain buildings and that plaintiff did not address the other

6

statutory requirements. Plaintiff stated that it now had buildings within the meaning of the statute, including sheds and other structures that the Borough previously determined to be taxable improvements, and that the buildings were necessary for its charitable purposes.

James Banahan, plaintiff's Executive Officer, certified that lot 71 is exclusively below the mean high tide water mark and, as such, the state owns the property under the public trust doctrine. Accordingly, plaintiff cannot build on the lot. He certified that club members and the general public "occasionally" explore the lot via kayak or canoe.

Plaintiff further explained that it offers three types of educational training programs. The first, the "Junior Sailing Training Program," offers sessions two and a half days per week, for four weeks. It conducts its classes via chalkboard sessions on picnic benches and hands-on sailboat sessions in the water. The class has a twenty-five-student limit, and the students are provided a textbook with information on sailing and water safety. Banahan certified that children who complete the junior program receive a state-recognized certification that notes their hours and level of sailing expertise, though plaintiff did not specify the state entity that recognizes the certification or provide any supporting documentation regarding either the certification or instructional materials.

7

Plaintiff stated that it offers scholarships for students with financial need and supports the program through members who volunteer their services and do not receive compensation. In its 2013 and 2015 tax returns, however, plaintiff stated that it did not provide scholarships or financial assistance.

Plaintiff's second program is the "Adult Sailing Training Program," which holds three classroom sessions and three days of water instruction. Volunteers run the classes and use loaner and volunteer boats. Instructors evaluate the students' prowess on the first day and cater subsequent instruction to the students' particular knowledge and skill.

Plaintiff's third program is the "Sailing Loaner Boat Program," which consists of members who do not own their own sailboats and pay a fee to use its three loaner boats. Plaintiff also runs weekly races during the summer for the purpose of promoting sailing. Banahan certified that the races are open to the public, that members of the public "occasionally participate" in the races and that the property is open to the public on the day of the race, so that the public can view the race for free.

Plaintiff's primary source of income is the "Junior Sailing Training Program." Its other sources of income include member dues, member fees, training tuition, donations, fundraising and "miscellaneous." Plaintiff does not

8

solicit contributions. It uses all fees it generates from the program to maintain its equipment and facilities.

On January 12, 2016, the assessor denied plaintiff's request for an exemption and assessed lot 71 at $82,300 and lot 21 at $313,500 total: $302,000 for land, and $11,500 for buildings. Thereafter, on January 9, 2016, plaintiff filed two petitions of appeal—one for lot 21 and one for lot 71—with the Monmouth County Board of Taxation. On March 31, 2016, the Monmouth County Board of Taxation issued two memorandums of judgment, denying plaintiff's claims as to each lot on the basis that the structures do not constitute "buildings" within the definition of the statute. The assessor did not make any findings as to plaintiff's organizational structure or use of the property.

Thereafter, on May 24, 2016, plaintiff filed a complaint with the tax court, seeking an exemption for both lots. On February 1, 2019, plaintiff moved for summary judgment. On June 18, 2019, the Borough cross-moved for summary judgment and dismissal of plaintiff's complaint with prejudice. On August 14, 2019, the tax judge entered a final order and judgment, with an accompanying opinion, denying plaintiff's motion for summary judgment and granting the Borough's cross-motion for summary judgment. In her opinion, the judge analyzed whether plaintiff's five wooden structures constitute "buildings" under

the statute and found that they do not because they are not intended for human residence or habitation, are not equipped with utilities, do not have windows or means of ventilation, and are not permanent nor affixed to the ground. The judge also analyzed plaintiff's claim for exemption under Paper Mill Playhouse v. Twp. of Millburn, 95 N.J. 503, 506 (1984), and found that plaintiff does not qualify for exemption as a school.

The judge also found that plaintiff is not organized to promote the moral and mental improvement of the public and is not exclusively used for that purpose. The judge did not specifically rule on whether plaintiff operates its property for profit but blended this analysis into whether plaintiff actually uses its property for the public's moral and mental improvement. The judge was not persuaded that plaintiff exists for the general public's benefit or that it is not engaged in a seemingly commercial enterprise. Finally, the judge found that lot 71 is not exempt because it is a vacant lot that is contiguous to lot 21 that it found is not exempt.

We disagree with plaintiff's argument that the tax judge erred by granting summary judgment in favor of the Borough on the issue of plaintiff's entitlement to a property tax exemption.

Rule 4:46-2 provides that a tax judge should grant summary judgment when "there is no genuine issue as to any material fact challenged" and the movant is entitled to judgment as a matter of law. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

When the plaintiff moves for summary judgment, the motion judge must view the facts and reasonable inferences therefrom in the defendant's favor and decide whether a reasonable factfinder could determine that the plaintiff has not met its burden of proof. The judge must deny the motion if a reasonable factfinder could decide in the defendant's favor. Globe Motor Co. v. Igdalev, 225 N.J. 469, 481 (2016). This court reviews the issue de novo. Advance Hous., Inc. v. Township of Teaneck, 215 N.J. 549, 566 (2013).

The burden to demonstrate the right to tax exemption is on the claimant, Int'l Sch. Servs., Inc. v. W. Windsor Twp., 207 N.J. 3, 24 (2011), and courts construe statutes granting exemption strictly against those seeking it. Paper Mill, 95 N.J. at 506-07. However, strict construction of the statutes must be reasonable and courts should not give words "a rigid scholastic interpretation . . . . The rule of strict construction must never be allowed to defeat the evident legislative design." Boys' Club of Clifton, Inc. v. Twp. of Jefferson, 72 N.J.

11

389, 398 (1977) (quoting <u>Twp. of Princeton v. Tenacre Found.</u>, 69 N.J. Super. 559, 563 (App. Div. 1961)).

The New Jersey Constitution exempts from taxation real property that is owned by a non-profit organization and used exclusively for charitable purposes—"as defined by law." <u>Advance Housing</u>, 215 N.J. at 566 (citing <u>N.J. Const.</u> art. VIII, § 1, ¶ 2). The applicable law with respect to property tax exemption is N.J.S.A. 54:4-3.6. <u>Id.</u> at 566-67. The portions of the statute that are relevant to the disputed issues between the parties provides:

> The following property shall be exempt from taxation under this chapter: all buildings actually used for colleges, schools, academies or seminaries, provided that if any portion of such buildings are leased to profit-making organizations or otherwise used for purposes which are not themselves exempt from taxation, said portion shall be subject to taxation and the remaining portion only shall be exempt; . . . all buildings actually used in the work of associations and corporations organized exclusively for the moral and mental improvement of men, women and children, provided that if any portion of a building used for that purpose is leased to profit-making organizations or is otherwise used for purposes which are not themselves exempt from taxation, that portion shall be subject to taxation and the remaining portion only shall be exempt; . . . the land whereon any of the buildings hereinbefore mentioned are erected, and which may be necessary for the fair enjoyment thereof, and which is devoted to the purposes above mentioned and to no other purpose and does not exceed five acres in extent: . . . provided, in case of all the foregoing, the buildings, or the lands on

which they stand, or the associations, corporations or institutions using and occupying them as aforesaid, are not conducted for profit[.]

[N.J.S.A. 54:4-3.6.]

The Supreme Court distilled the statutory requirements for a corporation seeking exemption into the following three-part test: "(1) it must be organized exclusively for the [tax-exempt purpose]; (2) its property must be actually and exclusively used for the tax-exempt purpose; and (3) its operation and use of its property must not be conducted for profit." Paper Mill, 95 N.J. at 506.

The Court later noted that the Legislature subsequently amended the former exclusivity-of-use requirement of N.J.S.A. 54:4-3.6 to permit exemption for property that is "actually used" by the corporation for the tax-exempt purpose. Int'l Sch., 207 N.J. at 16. Plaintiff's property is not actually or exclusively used for a tax-exempt purpose, nor is it organized exclusively for a tax-exempt purpose. Although plaintiff's operation is not conducted for profit, plaintiff nevertheless cannot satisfy the first two parts of the three-part Paper Mill test, nor the statutory requirement that the property contain a building. As such, plaintiff has failed to present sufficient evidence that it was entitled to property tax exemption for its two contiguous lots.

A-0185-19T4

I.

We first address plaintiff's argument that its structures qualify as "buildings" because they are permanent and have the structural characteristics of buildings. We will also address plaintiff's contention that the structures are ancillary buildings which store essential items necessary to its operation and are therefore entitled to exemption.

In Salvation Army v. Alexandria Twp., 2 N.J. Tax 292, 297 (Tax 1981), the tax court conceded that the Legislature did not define the term "building" in the exemption statute. The tax court set forth a two-part analysis to determine whether a structure qualifies as a "building" under the statute. Id. at 298-300. It termed the first part the structural test, for which the entity must be a "fabric or edifice constructed," id. at 298 (citing Children's Seashore House v. Atlantic City, 68 N.J.L. 385, 389-90 (1902)), that has "the physical characteristics with respect to material and design that are inherent in buildings." Ibid.

The tax court termed the second part the functional test, which "involves a determination of the purpose for which a structure was intended, as related to the purpose of the charitable organization." Id. at 299-300. In relation to the land, the building must "be the principal factor in the scheme and not a mere incident to the purposes of the encampment or some other temporary device."

14

Id. at 299 (quoting Children's Seashore, 68 N.J.L. at 390). The court cautioned that a "less restrictive definition" could lead to the exemption of "large aggregations of property from the common burden of taxation." Ibid. (quoting Children's Seashore, 68 N.J.L. at 391).

In Salvation Army, the tax court examined the plaintiff's claim for exemption of nine permanent tent platforms, which were between eighteen and twenty-four square feet, made of wood and rested on cinderblocks that were not embedded in the ground. Id. at 300-01. The plaintiff pitched tents on them during the camping season and up to nine people could fit in them. Id. at 301. The tax court held that the structures were not "buildings" under the structural test. Ibid. The court in Fairleigh Dickinson University v. Florham Park Borough, 5 N.J. Tax 343, 346 (Tax 1983), also recognized this dichotomy of temporariness versus permanence. It held that the guardhouses in question were not "buildings" because it did not have evidence before it that they "were of sufficient permanence to be considered buildings." Ibid.

Here, the structures in question do not satisfy the structural test. They do not appear to be intended for habitation. They are small and do not have windows, and there is no indication that they have ventilation, utilities, or plumbing. They rest on cinderblocks and do not display any indications of

15

permanence. Rather, they appear to be akin to portable storage containers that plaintiff uses to store and secure its possessions.

As to the functional test, the tax court in <u>Salvation Army</u> found that the plaintiff's structures failed to satisfy this test as well. <u>Id.</u> at 301-02. The campers' cabins qualified as "buildings" within the definition of the statute, as they provided permanent housing that was essential to the plaintiff's summer camp. The tents and platforms, however, were incidental and temporary. <u>Ibid.</u>

Here, like in <u>Salvation Army</u>, the structures do not satisfy the functional test. They are not the focal point of the property. Rather, they are small, moveable, shed-like structures on a large plot of land. The sole function they serve is to store plaintiff's possessions. Plaintiff does not utilize them for a function essential to its operations such as conducting classroom sessions or sailing practice. Because plaintiff does not satisfy the structural nor function tests, its structures cannot meet the statutory requirement that the tax-exempt land contain a "building."

The <u>Salvation Army</u> tax court also noted that the Legislature emphasized the exemption of buildings and only intended for land holdings to be exempted when they are necessary for the enjoyment of the buildings. <u>Id.</u> at 296. As such, "[v]acant land is entitled to no exemption" under the statute. <u>Ibid.</u> <u>Accord</u> <u>City</u>

of Hackensack v. Hackensack Med. Ctr., 9 N.J. Tax 460, 462 (Tax 1988) (stating that "[l]and is exempt under N.J.S.A. 54:4-3.6 only as an incident to the exemption of buildings erected thereon").

As to the statutory exemption for land necessary for the fair enjoyment of the building, "necessary" does not mean that the land is indispensable, but that it is reasonably necessary to accomplish the purposes of the institution. Boys' Club, 72 N.J. at 401. As such, the caselaw does not support the exemption of either the structures on lot 21 or the land. Under Salvation Army, plaintiff's land must be necessary to the enjoyment of the buildings for the surrounding land on lot 21 to be exempt. Clearly it is not. It therefore follows that lot 71, which was only "occasionally" explored by members and the public, which is insufficient to qualify as necessary to plaintiff's sailing operations, also cannot qualify. The tax judge noted—and we agree—that once lot 71 is found to not be exempt on its own, and lot 21 is found to not be exempt, the former cannot gain exemption by virtue of being contiguous to the main lot.

As to plaintiff's argument regarding ancillary buildings, we examine the property as a whole, in relation to its tax-exempt purpose. See Fairleigh Dickinson, 5 N.J. Tax at 356 (noting that property should be examined "as a whole in relation to its purpose and not merely as a composite of unrelated,

17

individual buildings"). Viewing the property as a whole in relation to its purpose of teaching sailing skills, the small, portable sheds that store equipment do not constitute ancillary buildings under the statute.

II.

We next turn to plaintiff's argument that its constituent documents demonstrate that it is exclusively organized for training and education, which is the essence of a school or college, and that its structures—which it also argues are "buildings"—provide formal instruction in a manner consistent with a school or college.

We look at the corporation's organizational documents, including its bylaws and articles of incorporation, when determining whether it is organized exclusively for a tax-exempt purpose. Phillipsburg Riverview Org., Inc. v. Town of Phillipsburg, 26 N.J. Tax 167, 176 (Tax 2011).

As to plaintiff's actual use of the property for the charitable purpose, the proper application of this test "depends upon the facts of each case." Paper Mill, 95 N.J. at 514. In Advance Housing, the court summarized the issue:

> Although all relevant considerations cannot be captured
> by any list given the ever-changing scenarios that will
> arise, and although each consideration may not
> necessarily deserve the same weight, here are some that
> apply to the circumstances of this case: (1) the
> charitable work done by the private entity will spare the

18

government an expense that ultimately it must bear . . . (2) the private entity must not be engaged in a seeming commercial enterprise . . . (3) the property must be used in a manner to further the charitable purpose . . . (4) the receipt of government subsidies or funds is not contraindicative of a charitable purpose . . . (5) financial support and recognition by the State of a private entity's charitable work may be indicative that its property is used for a charitable purpose . . . and (6) the private entity in carrying out its charitable mission through the use of its property is addressing an important and legitimate governmental concern[.]

[215 N.J. at 572-73 (internal citations and quotations omitted).]

Plaintiff's organizational documents do not meet the first prong of the Paper Mill test and, as such, it does not qualify for exemption under the statute as an educational institution. Its constitution does set forth its purpose as providing training for aquatic activities, and its certification of incorporation lists its purpose as providing training and instruction in aquatic activities and safety in those activities. However, it fails the exclusivity requirement of the first prong because its bylaws demonstrate that it uses its property exclusively for its members' social activities.

Plaintiff argues that interpreting the exclusivity requirement to exclude social activities would deny exemption to traditional schools because they organize social and entertainment activities, such as dances, proms and fundraisers. However, these activities are incidental to the schools' educational

purposes and activities, are typically sporadic, and often occur after school hours. Here, plaintiff offers two entire classes of memberships—sustaining memberships and honorary memberships—that revolve entirely around participation in social activities.

Plaintiff also does not qualify as a school or college under the caselaw. N.J. Carpenters Apprentice Training & Educ. Fund v. Borough of Kenilworth, 147 N.J. 171, 173-74 (1996), involved the exemption claim for the building owned and operated by a carpenters training and education fund. The Court declined to adopt a "broad" definition of "school" that would encompass "all institutions of learning." Id. at 178. The Court noted that prior caselaw "does not suggest that every barber's college or art school is also a college[.]" Id. at 182. Although the fund did serve an educational purpose in training apprentices to become carpenters, its primary purpose was to benefit the construction industry, a profit-making sector of the economy, and it did not benefit society in the way the Legislature contemplated when it enacted the statute. Id. at 189. "[I]t is the public benefit resulting from education that justifies granting schools and colleges exemption from taxation[.]" Ibid. (citing Kimberley Sch. v. Town of Montclair, 2 N.J. 28, 42 (1949)).

Similarly, the Court in <u>Textile Research Institute v. Township of Princeton</u>, 35 N.J. 218, 223 (1961), affirmed the agency's denial of exemption to the land and property of an organization that provided research and instruction in the textile field on the basis that it was primarily designed to benefit the textile industry. The court held that "the word 'college' does not embrace an organization which is controlled by a particular profit-making segment of society and which is devoted principally and primarily to research for the benefit of that industry." <u>Id.</u> at 222-23. Moreover, In <u>Township of Princeton v. Institute for Advanced Study</u>, 59 N.J. Super. 46, 49 (App. Div. 1960), the Court examined the exemption of buildings used in connection with an educational institution. The institution in question was a non-profit organized for advanced study. <u>Id.</u> at 49. It had twenty-two faculty members and about 125 students, most of whom were on leaves of absence from other universities and participated in the institution to pursue their respective fields of research or study. <u>Id.</u> at 50. The institution did not have formal instruction and afforded members office space and secretarial help, with the freedom to pursue their own research. <u>Id.</u> at 50-51. In holding that the institution was a "college," the court employed an expanded interpretation of "college" that "comport[ed] with the manifest reason and obvious purpose of the law." <u>Id.</u> at 55. The court noted that the institution

21

had "every attribute of an institution of learning" and "encourag[ed] the cause of education and research." Ibid.

Here, plaintiff's organizational documents demonstrate that it intends to benefit its members by providing them with sailing instruction, as opposed to benefitting the for-profit sailing industry. However, it does not satisfy any of the other criteria for a school or college. It is not accredited as a school by the New Jersey Department of Education or any other governmental agency. Its organizational documents reference training and instruction, but do not assert that it is a school or college. Plaintiff does not attach its certification of course completion or set forth what, if any, benefits inure to its members by virtue of obtaining the certificate. Plaintiff only provides limited instruction to its students for a brief period of time and furthering the cause of sailing knowledge and proficiency does not provide the necessary public and societal benefit for to qualify for exemption.

### III.

We now address plaintiff's contention it is organized for the public's moral and mental improvement because it promotes public interest in sailing and contributes to the educational and cultural development of society by educating families about sailing and by allowing the community to view the races.

"There is no legislative delineation of the 'moral and mental improvement' classification in the exemption statute. The cluster of abstract concepts themselves suggest that, at most, only a descriptive definition is contemplated." Chester Theatre Grp. of Black River Playhouse v. Borough of Chester, 115 N.J. Super. 360, 364 (App. Div. 1971). In Chester Theatre, the court found that a theater organization satisfied the purpose of the exemption in that it sought "to enrich the experience of its members and patrons and to ennoble and strengthen their character," id. at 365, and to "develop[] or better[] . . . the mental faculties." Id. at 364. Courts have applied the classification "to various public and civic organizations, which directly serve the public by contributing to the educational, cultural and spiritual development in society in general." Phillipsburg, 26 N.J. Tax at 176. "[T]he entity must 'perform[] an important public service through its activities which promote "the moral and mental improvement of men, women and children[.]"'" Int'l Sch. Servs., Inc. v. W. Windsor Twp., 381 N.J. Super. 383, 388 (App. Div. 2005) (second alteration in original) (quoting Town of Bloomfield v. Acad. of Med., 47 N.J. 358, 366 (1966)).

Just as plaintiff's organizational documents demonstrate that it is not organized exclusively as a school, they also demonstrate that it is not organized exclusively for the public's moral and mental improvement. Its bylaws show

that its members are its beneficiaries. Plaintiff offers four different classes of memberships, and the free memberships offer benefits involving social activities, with very limited other benefits. The family membership, which requires a fee, provides the most benefits.

Even if this court were to examine whether plaintiff exclusively uses its property for the public's moral and mental improvement, plaintiff fails to meet this prong because its bylaws limit nearly all benefits of its activities to members. Not only does plaintiff only permit members to avail themselves of its sailing training and instruction, but it only permits members to use its docks, store boats and use its moorings, use its picnic tables and docks, and access social and sailing events.

The only benefit plaintiff offers to the non-member public is community access to the river and the ability to view races on its race days. The public otherwise has limited access (or no access) to the river, because the shoreline is occupied by private residences. However, temporary and limited access to the property does not equate to actual use of the property by the public. This limited public benefit clearly does not suffice as a valuable public service that enhances the public's moral and mental improvement, especially in light of our Court's holdings that "[s]tatutes granting exemption from taxation represent a departure

24

and consequently they are most strongly construed against those claiming exemption." Int'l Sch., 207 N.J. at 15 (quoting Princeton Univ. Press v. Borough of Princeton, 35 N.J. 209, 214 (1961)). Courts have held that members' benefitting from "social intercourse" is insufficient reason to grant properties the moral and mental improvement exemption. Camden Lodge No. 111 v. City of Camden, 135 N.J.L. 532, 534 (Sup. Ct. 1947).

Plaintiff argues that it offers "tangible benefits to families and the community," including instilling teamwork, communication, responsibility, problem-solving skills, and a sense of adventure. Although sailing is certainly a fine activity, it is a recreational activity and does not contribute to the public's moral and mental improvement. Entities are organized for the public's moral and mental improvement when organized for higher-level purposes, particularly those intended to strengthen character and develop mental faculties. See, e.g., Paper Mill, 95 N.J. at 507 (theater organization organized "to promote 'a greater interest in and a greater appreciation of art, music, drama, history, literature, education and the theater'"); Bloomfield, 47 N.J. at 362 (organization dedicated to "'pathological and anatomical study and investigation, and the advancement and promotion of medical and surgical science,'" and that maintained largest medical library in State, which was open to public); Princeton Univ. Press, 35

N.J. at 211 (printing and publishing plant that published outstanding scholarly works and was formed "for the promotion of education and scholarship"); Int'l Sch., 381 N.J. Super. at 385-86 (organization designed "'to remedy the shortcomings of overseas schools in which American children were enrolled and to serve the children by enhancing the quality of their education'"); Chester Theatre, 115 N.J. Super. at 361-62 (theater group that provided artistic performances open to public and sought "'to stimulate, perpetuate and develop interest in the dramatic arts and to educate the general public in the arts'"); Planned Parenthood of Bergen Cty., Inc. v. Hackensack, 12 N.J. Tax 598, 609 (Tax 1992) (organization dedicated to provision of gynecological and reproductive healthcare services to under-privileged mothers). This is not the case here.

## IV.

Finally, we address plaintiff's argument that it satisfies the third prong of the Paper Mill test because it is not conducted for profit.

In examining whether any organization is conducted for profit, we focus on "whether charges are fixed with the obvious intention of yielding a profit." Kimberley Sch., 2 N.J. at 37. When considering a school, specifically, we consider:

[T]he background and nature of the organization of the school; the character and nature of the membership of its board of trustees or other governing body, particularly where former private owners are there represented; the amount of its income as compared with its costs of operation; the amount of any excess of income over costs, and the actual and possible use of such excess; the existence and extent of its accumulated surplus and the purpose to which it may be put; and the amount of tuition charges as compared with those of similar schools; the scale of salaries paid to its teachers and officials as compared with similar schools, public as well as private; and the many other factors bearing upon the ascertainment of the dominant motive in the conduct of the school which need not now be detailed.

[Id. at 38.]

In Paper Mill, the Court stated that this court should not look solely at an organization's net income, but should engage in "a pragmatic inquiry into profitability [and] a realistic common sense analysis of the actual operation of the taxpayer[.]" 95 N.J. at 521. The statute does not require that the organization operate at a loss or that it cannot achieve a surplus. Ibid. One of the critical factors "is where the profit goes. . . . 'If we can trace it into someone's personal pocket . . . the [organization] is not entitled to tax exemption.'" Id. at 522 (citing City of Trenton v. N.J. Div. of Tax Appeals, 65 N.J. Super. 1, 12 (App. Div. 1960)).

A-0185-19T4

Here, nearly all factors in the record support plaintiff's arguments that it does not operate or use its property for profit. Nearly all of its employees are volunteers and its bylaws provide that, upon dissolution, it will dispose of its assets to other 501(c)(3) organizations. It operates at a loss most years and, when it does make a profit, it uses the excess income in subsequent years for organizational purposes. There is nothing in the record that demonstrates that its profit went into the personal pockets of anyone in the organization.

Although we accept plaintiff's argument that it does not operate for profit, we affirm the grant of summary judgment to the Borough based on plaintiff's failure to satisfy the first two prongs of the Paper Mill test and the statutory requirement that the property contain buildings.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0185-19T4